**Howard HUGHES, Petitioner,**

v.

**Frank IRVIN, Supt., Wende Correctional Facility, Respondent.**

**No. CV 97 0365 (RJD).**

United States District Court,
E.D. New York.

June 25, 1997.

Howard Hughes, Alden, NY, for petitioner.

David O. Leiwant, District Attorney's Office of Kings County, Brooklyn, NY, for respondent.

### MEMORANDUM & ORDER

DEARIE, District Judge.

*Pro se* petitioner Howard Hughes filed this habeas petition pursuant to 28 U.S.C. § 2254, challenging his 1980 judgment of conviction for second degree murder, first degree manslaughter, and second degree criminal possession of a weapon. Respondent moves to dismiss the petition as untimely and as barred by laches. The Court denies respondent's motion.

### Procedural History

On the night of December 22, 1977, petitioner Hughes and another man shot a candy store owner in the course of a robbery attempt. The prosecution case consisted of the testimony of several eyewitnesses and a witness who testified that Hughes confessed to him on the night of the shooting. On May 2, 1980, after a jury trial conviction, petitioner

1. Petitioner also filed an action in this Court in 1992, which was deemed a habeas petition, and was voluntarily dismissed without prejudice to allow petitioner an opportunity to exhaust all of

was adjudicated a second felony offender and sentenced. So began a marathon of seventeen years of petitioner's direct appeals and collateral attacks, concluding with the instant petition for habeas relief

Petitioner timely appealed his conviction, but due to replacement of appellate counsel and misplaced records, petitioner's brief was not filed until November 1986. Pet. Mem. Of Law at 19. During the six-year delay, Hughes continually inquired about the status of his appeal. *See* Appendix to Pet. Mem. Of Law ("Mem. Appendix"), Exs. 9–11. Upon *pro se* petitioner's motion, the Appellate Division ordered the People to file their opposition brief by January 15, 1988, or be precluded from filing a response. Decision & Order 12/21/87, App. Div., 2d Dep't (Mem. Appendix, Ex. 13). The Appellate Division affirmed the judgment of conviction on March 14, 1988. *People v. Hughes,* 138 A.D.2d 523, 526 N.Y.S.2d 130 (2d Dept 1988). On May 11, 1988, the Appellate Division denied petitioner leave to appeal to the New York Court of Appeals. On September 16, 1988, the Court of Appeals dismissed petitioner's motion for leave to appeal to the state's highest court. *People v. Hughes,* 72 N.Y.2d 957, 534 N.Y.S.2d 671, 531 N.E.2d 303 (1988).

Beginning in December 1980, several months after his conviction, Hughes filed a stream of collateral attacks in New York state courts. Between 1980 and 1984 petitioner filed a total of nine motions to vacate his conviction pursuant to New York Criminal Procedure Law § 440.10 and a motion for a writ of error *coram nobis*.[1] Several of his motions were repetitive. Since the conclusion of direct review in 1988, petitioner has had collateral review motions pending before New York state courts continuously until August 5, 1996 (leave to appeal denied on petitioner's seventh motion to vacate), with the exception of a four-month gap between September 12, 1989 (denial of petitioner's sixth motion to vacate) and January 11, 1990 (peti-

his claims. *See* Order dated March 26, 1992, *Howard Hughes v. Supreme Court of the State of New York,* 92–CV–1017 (RJD).

tioner files seventh motion to vacate).[2]

Petitioner's seventh motion to vacate, filed on January 11, 1990, bears separate mention. Hughes claimed that the prosecution failed to disclose *Rosario* [3] material—an allegedly authentic police report that memorialized a key prosecution witness' statement that persons other than Hughes confessed to the witness that they killed the candy store owner.[4] Petition Appendix, Ex. A; Resp. Aff. at 5. On March 23, 1990, petitioner's motion was denied without a hearing. Resp. Aff. at 5. Hughes appealed, and the Appellate Division reversed and remanded the motion to the lower court for an evidentiary hearing on whether the police report at issue was authentic, and if so, whether Hughes was prejudiced by its nondisclosure. *People v. Hughes,* 181 A.D.2d 912, 581 N.Y.S.2d 838 (2d Dep't 1992). On February 9, 1993, a hearing was held on petitioner's seventh § 440 motion, at the conclusion of which the court held that Hughes had failed to prove that the document at issue was authentic, The judge credited the police detective who testified that he never prepared the report proffered by the defendant, and declined to accept the defendant's testimony as to the manner in which he allegedly received the police report. Resp. Brief 8/31/95 at 15 (citing to 2/9/93 hearing minutes). The lower court also issued a written Decision and Order dated April 12, 1993, reiterating its finding that Hughes had failed to prove that the police report was authentic. *Id.* at 14. The Appellate Division granted leave to appeal on June 16, 1993. Resp. Aff. 5/26/94.

There followed a three-year delay in the appeal process. Petitioner states that he filed his appeal brief on March 21, 1994, and launched his "crusade to compel the Respondents to file their answer." Pet. Men. Of Law at 15. From September 1994 to October 1995, petitioner wrote numerous letters to his counsel and to the Appellate Division inquiring about the status of his appeal and the state's delay. *See* Mem. Appendix, Exs. 6–7. Upon advice from the Appellate Division, petitioner moved to preclude the People from replying. *See id.,* Ex. 7. The People finally filed their brief on August 31, 1995, seventeen months after Hughes' submission. On January 22, 1996, the Appellate Division affirmed the lower court's conclusion. *People v. Hughes,* 223 A.D.2d 654, 637 N.Y.S.2d 21 (2d Dep't 1996). On August 5, 1996, the Court of Appeals denied leave to appeal. *People v. Hughes,* 89 N.Y.2d 865, 653 N.Y.S.2d 288, 675 N.E.2d 1241 (1996).

Hughes' habeas petition, dated December 30, 1996 and filed in this Court on January 23, 1997, raises twenty-four claims by way of a voluminous appendix containing his submissions to New York state courts on direct and collateral appeals during a period of fourteen years. Petitioner's grounds for habeas relief include the failure to disclose exculpatory evidence, ineffective assistance of trial and appellate counsel, a Fourth Amendment violation, the use of perjured testimony, and a *Batson* claim. Petitioner also moves for appointment of counsel pursuant to 18 U.S.C. § 3006A.

### Discussion

Respondent does not address the merits of petitioner's claims, but urges the Court to dismiss Hughes' petition as untimely and as barred by the doctrine of laches.

### 1. Statute of Limitations

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), which became effective on April 24, 1996, establishes a one-year statute of limitations from "the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review" for the filing of a habeas application seeking relief from a state court conviction.

---

**2.** While Hughes' seventh motion to vacate was pending, petitioner filed his eighth § 440 motion on January 30, 1992, his ninth collateral attack in the form of a motion for a writ of error *coram nobis* on April 9, 1992, and his tenth collateral attack on May 21, 1993. Petitioner was denied leave to appeal the denial of his tenth motion on October 7, 1994.

**3.** *People v. Rosario,* 9 N.Y.2d 286, 213 N.Y.S.2d 448, 173 N.E.2d 881 (1961).

**4.** At trial, this witness testified that on the night of the shooting, Hughes confessed to him that he was responsible for the murder. Resp. Aff. in Opp. ("Resp. Aff.") at 5 n. 1.

28 U.S.C. § 2244(d)(1)(A).[5] The running of the limitations period is tolled for the time period during which "a properly filed application" for collateral review is pending in state court. *Id.* § 2244(d)(2).

■ The New York Court of Appeals denied petitioner leave to appeal his conviction on September 16, 1988. In petitioner's case, the one-year time limit would have begun to accrue on December 16, 1988, at the conclusion of the ninety days during which he could have sought certiorari in the United States Supreme Court. *See* Rule 13 of Rules of the Supreme Court of the United States. But as of December 16, 1988, Hughes' fifth § 440 motion was already pending in state court, which operated to immediately toll the running of the statute of limitations. Until September 12, 1989, when petitioner's sixth motion was denied, Hughes had a continuous stream of post-conviction applications pending in state courts. From September 12, 1989, the statute of limitations ran for four months, until January 11, 1990, when Hughes filed his seventh application for collateral review, thereby restarting the tolling provision. That motion was finally resolved against petitioner on August 5, 1996. Thus, on August 5, 1996, Hughes had eight months remaining, until April 1997, to file his habeas petition in compliance with the one-year time limit. Hughes is deemed to have filed the instant application when he delivered it to prison officials. *See Houston v. Lack,* 487 U.S. 266, 273, 108 S.Ct. 2379, 2383, 101 L.Ed.2d 245 (1988). Thus, Hughes "filed" his habeas petition sometime between December 26, 1996, the date he signed his petition, and January 23, 1997, the date the action was filed with the Court, well before the application would have been time-barred.

Respondent acknowledges that Hughes filed numerous collateral review motions, beginning long before the completion of direct review of his conviction, but argues that some of these motions should not toll the statute of limitations because they were not "properly filed." Respondent focuses on the seventh § 440 motion, arguing that it cannot

be considered a "properly filed" collateral application because the state court found that Hughes did not meet his burden of establishing that the police report underlying that application was authentic. Resp. Mem. Of Law at 5.

■ The Court rejects respondent's argument. The Court's research failed to unearth any case law construing "a properly filed application," as that term is used in § 2244(d)(2). Nor does legislative history shed any light on what Congress intended by that restriction. *See* S.Rep. No. 104–179 (1995), reprinted in 1996 U.S.C.C.A.N. 924; H.R. Conf. Rep. No. 104–518 (1996), reprinted in 1996 U.S.C.C.A.N. 944. In other contexts, the term "properly filed" refers to satisfying procedural requirements, such as timeliness and proper place of filing. *See, e.g.,* 37 C.F.R. § 252.4(e) ("properly filed" refers to timeliness of filing claims with Copyright Office); *Rothman v. United States,* 508 F.2d 648, 651 (3d Cir.1975) ("properly filed" notice of appeal discussed in terms of place, time, procedural requirements), *Cohen v. S.U.P.A. Inc.,* 814 F.Supp. 251, 258–59 (.D.N.Y.1993) (discussing requirements for "properly filed" EEOC complaint); *Dells, Inc. v. Mundt,* 400 F.Supp. 1293, 1295 (S.D.N.Y.1975) (addressing procedural requirements for "proper filing" under Fed. R. Civ. Pro. 15). The Court is persuaded that "properly filed," as used in § 2244(d)(2), means that in order to trigger the tolling mechanism, a petitioner's collateral review application must be submitted in accordance with any applicable procedural requirements, such as notice to the respondent, correct place of filing, and timeliness of the motion.

The Court rejects the proposition that a seemingly frivolous collateral attack is not "properly filed" for purposes of tolling the one-year statute of limitations. While the lower court first denied petitioner's seventh motion without a hearing, the Appellate Division reversed and remanded for an evidentiary hearing. Subsequently, the lower court found that Hughes failed to establish that the

---

5. The amended habeas corpus statute clearly applies to Hughes' petition since it was filed after the effective date of the AEDPA. *See Reyes v.*

*Keane,* 90 F.3d 676, 679 (2d Cir.1996) (holding that one-year statute of limitation did not apply to petition filed before April 24, 1996).

proffered police report was authentic. While that factual determination would be entitled to a presumption of correctness in this Court, petitioner could rebut the finding by "clear and convincing evidence." *See* 28 U.S.C. § 2254(e)(1). It is illogical not to toll the statute of limitations, and thus dismiss a habeas petition as untimely, during the pendency of a collateral motion on a matter that could entitle a petitioner to habeas relief. The writ of habeas corpus would be emasculated if the factual determination of a state court could preclude a petitioner's access to federal court to challenge that very finding. Moreover, according to respondent's argument, it is unclear at what point Hughes' seventh § 440 motion no longer qualified as "properly filed." Would it be on January 11, 1990, when the motion was filed? On March 23, 1990, when the lower court denied it without a hearing? Did the motion become "properly filed" after the Appellate Division reversed and remanded, only to revert to "improperly filed" status on February 9, 1993, when the lower court found that the document was not authentic? The Court finds that Hughes' seventh § 440 motion was "a properly filed application" for collateral review within the meaning of § 2244(d)(2), thus triggering the tolling mechanism and rendering the instant habeas petition timely.[6]

### 2. Rule 9(a)

█ Respondent argues that the doctrine of laches, as codified in Rule 9(a) of the Rules Governing § 2254 Cases, operates to bar petitioner's habeas petition. Respondent misstates the burden of production and proof in a Rule 9(a) application, and does not even come close to meeting the requisite burden.

█ Rule 9(a) provides, in relevant part, that "[a] petition *may* be dismissed if it appears that the [respondent] has been prejudiced in its ability to respond to the petition by delay in its filing." Rule 9(a) of Rules Governing § 2254 Cases (emphasis added). The Advisory Committee Notes emphasize that the decision to dismiss pursuant to the

equitable doctrine of laches rests with the court's discretion. *See Hill v. Linahan,* 697 F.2d 1032, 1035 (11th Cir.1983). In order to satisfy its "heavy burden" in seeking the application of Rule 9(a), the respondent must "(1) make a particularized showing of prejudice, (2) show that the prejudice was caused by the petitioner having filed a late petition, and (3) show that the petitioner has not acted with reasonable diligence as a matter of law." *Walters v. Scott,* 21 F.3d 683, 686–87 (5th Cir.1994); *see also Hill,* 697 F.2d at 1035; *Honeycutt v. Ward,* 612 F.2d 36, 41 (2d Cir.1979), *cert. denied,* 446 U.S. 985, 100 S.Ct. 2969, 64 L.Ed.2d 843 (1980); *Hodge v. Walker,* No. 95–CV–2873, 1996 WL 363181, *2 (S.D.N.Y. July 1, 1996); *Moseley v. Scully,* 908 F.Supp. 1120, 1130 (E.D.N.Y.1995), *aff'd,* 104 F.3d 356 (2d Cir.1996). The state must show that prejudice flows from the specific claims raised in the petition, not from the "mere passage of time alone." *Walters,* 21 F.3d at 687. Only after satisfying these requirements does the burden shift to the petitioner to rebut the respondent's claim. *Id.*

Respondent relies on a portion of the Advisory Committee Notes that mistakenly states that a presumption of prejudice applies if the petition is filed more than five years after conviction. While the original proposed text of Rule 9(a) included such a presumption, Congress deleted this language from the final version of the rule, noting that placing the burden of rebutting prejudice on the petitioner is "unsound policy" and is inconsistent with the equitable principles governing habeas relief. *Hill,* 697 F.2d at 1035 n. 3 (citing H.R. No. 1471, 94th Cong., 2d Sess. 1, 5, reprinted in 1976 U.S.C.C.A.N. 2478, 2481); *see also Moseley,* 908 F.Supp. at 1130 & n. 8 (noting that Advisory Committee comment is in error) (citing *LaLande v. Spalding,* 651 F.2d 643, 644 (9th Cir.) ("That statement [in Advisory Committee Notes] ... is in error."), *cert. denied,* 452 U.S. 965, 101 S.Ct. 3119, 69 L.Ed.2d 978 (1981)).

---

**6.** Respondent also argues that petitioner's eighth and ninth collateral applications were not "properly filed" because they reiterated previously raised claims. Resp. Mem. Of Law at 3, 5. The Court need not consider this contention because

the Court's conclusion with respect to the seventh § 440 motion renders Hughes' habeas petition timely regardless of whether the pendency of the eighth and/or ninth motions toll the statute of limitations.

Respondent utterly fails to satisfy its burden of demonstrating "particularized prejudice," that such prejudice was caused by petitioner's unreasonable delay, and that petitioner was not reasonably diligent. Respondent states that the District Attorney's Office has been unsuccessful in obtaining the trial transcript from the New York Supreme Court, that the original trial folder of Hughes' case has been lost, and that most of the documents pertaining to petitioner's post-conviction litigation are also missing.[7] Respondent argues in mostly general terms that without the underlying record, petitioner's claims are difficult to answer. Surely, this assertion does not rise to the level of a showing of "particularized prejudice." First, the case file should be archived in the New York Supreme Court, and the District Attorney's Office can obtain it. Second, petitioner states in a footnote the he possesses "a complete set of trial transcript, and all of Respondents answers throughout the entire proceedings (sic)." Pet. Mem. Of Law at 21 n. 7. Third, as respondent acknowledges, Hughes' petition consists of his previously filed motions in state courts, to all of which the People had responded in the past. As often is the case, a respondent's opposition on the merits to a habeas petition consists merely of restating the arguments previously made to state courts. Thus, even if the "original trial folder" is irretrievably lost, the District Attorney's Office is not significantly hampered in its ability to address petitioner's claims.

Respondent also fails to show that whatever prejudice it allegedly suffers resulted from petitioner's unreasonable delay in bringing his habeas petition. There is no indication that the case file would have been readily available had Hughes filed his habeas application earlier. As recently as August 31, 1995, when the People finally filed their appeal brief on Hughes' seventh 440 motion, there is no mention of missing records.

Finally, it cannot be said that petitioner has not been diligent with respect to his case. He wrote numerous letters in exasperation over the delay in state courts, and litigated in state courts for almost seventeen years after his conviction. It is worth noting that the People are responsible for a chunk of the sixteen-and-one-half years that elapsed between Hughes' conviction and the filing of this petition. The state took over a year to respond to petitioner's direct appeal brief, filing a response only after the Appellate Division imposed a deadline. On Hughes' seventh motion to vacate, the People took almost one-and-one-half years to file its brief to the Appellate Division, again after petitioner moved to preclude the state's reply. Part of the delay in this case is simply the result of the exhaustion requirement, coupled with the length of time it takes to litigate a post-conviction claim in the overburdened New York state court system. Moreover, through no fault of petitioner, it took over six years for his appellate counsel to locate the trial transcript and file his direct appeal brief The Court denies respondent's motion to dismiss on the basis of Rule 9(a) because respondent clearly has not satisfied its burden.

For the foregoing reasons, respondent's motion to dismiss is denied. Petitioner's application for appointment of counsel is denied, with leave to renew after respondent files its opposition on the merits. Respondent is directed to obtain the necessary trial and post-conviction documents from the archives or from petitioner. Respondent's opposition to petitioner's application for a writ of habeas corpus is due no later than August 8, 1997.

SO ORDERED.

---

7. The District Attorney's Office ordered Hughes' court file from the trial court, but it had not been produced as of March 31, 1997. Resp. Mem. Of Law at 8–9 & n. 9.