**Alberto Dominguez GALINDO, Petitioner,**

v.

**Gary L. JOHNSON, Director, Texas Department of Criminal Justice, Institutional Division, Respondent.**

No. P–97–CA–074.

United States District Court, W.D. Texas, Pecos Division.

June 15, 1998.

Alberto D. Galindo, Gatesville, TX, Petitioner Pro Se.

Amy F. Swann, Office of the Attorney General, Austin, TX, for Defendant.

### ORDER DENYING RESPONDENT'S MOTION TO DISMISS PURSUANT TO TITLE 28 U.S.C. § 2244(d)

FURGESON, District Judge.

BEFORE THIS COURT is the Application for Writ of Habeas Corpus pursuant to Title 28 U.S.C. § 2254 filed by the Petitioner, **ALBERTO DOMINGUEZ GALINDO**, and the Respondent's Motion to Dismiss pursuant to Title 28 U.S.C. § 2244(d).

### PROCEDURAL HISTORY

On the 26th of February 1991, the Petitioner was found guilty by a jury of aggravated delivery of a controlled substance in the 112th Judicial District Court, Pecos County, Texas, in cause number 1706, styled *The State of Texas v. Alberto Dominguez Galindo*. Petitioner's punishment was subsequently set at life imprisonment to be served in the Texas Department of Criminal Justice, Institutional Division. Thereafter the Petitioner filed a direct appeal challenging his conviction to the Court of Appeals for the Eighth District of Texas which affirmed his conviction on the 8th of July 1992. Petitioner's subsequent request for petition for discretionary review was denied by the Texas Court of Criminal Appeals on the 30th of October 1992.

The Petitioner next collaterally attacked his conviction by filing three (3) state applications for writ of habeas corpus in application numbers 24,324–01, –02, –03, styled *Ex parte Galindo*. Petitioner filed his first state application on the 18th of November 1992, which was denied by the Texas Court of Criminal Appeals on the 23rd of June 1993. Petitioner filed his second state application on the 24th of February 1995, which was again denied by the Texas Court of Criminal Appeals on the 24th of May 1995. Petitioner filed his third and final state application on the 10th of September 1996. The Texas Court of Criminal Appeals dismissed Petitioner's third application as an abuse of the writ pursuant to Article 11.07 § 4 of the Texas Code of Criminal Procedure on the 30th of April 1997.

Petitioner filed this federal Application for Writ of Habeas Corpus pursuant to Title 28 U.S.C. § 2254 on the 21st of August 1997, raising two (2) main grounds for relief: 1) his trial counsel failed to interview an essential defense witness; and 2) his appellate counsel failed to challenge the sufficiency of the evidence in his direct appeal. The Respondent counters that Petitioner's federal Application should be dismissed pursuant to Title 28 U.S.C. § 2244(d).

### DISCUSSION

Before the Anti-terrorism and Effective Death Penalty Act of 1996 (hereinafter "AEDPA"), a prisoner did not have a time limit in which to file for habeas review in federal court. However, on the 24th of April 1996, the AEDPA added Title 28 U.S.C. § 2244(d) which states:

(d)(1) A 1–year period of limitation shall apply to an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court. The limitation period shall run from the latest of—

(A) the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;

(B) the date on which the impediment to filing an application created by State action in violation of the Constitu-

tion or laws of the United States is removed, if the applicant was prevented from filing by such State action;

(C) the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or

(D) the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.

(2) The time during which a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending shall not be counted toward any period of limitation under this subsection.

Whether this limitation period applies retroactively to cases in which the one (1) year period has run before the 24th of April 1996, the AEDPA's effective date, has been the subject of disagreement among courts, but an issue that the Fifth Circuit recently resolved in *United States v. Flores,* 135 F.3d 1000 (5th Cir.1998). In *United States v. Flores,* 135 F.3d at 1004, the Fifth Circuit determined that petitioners must be afforded a "reasonable time" following the passage of the AEDPA before claims which have accrued before the AEDPA's passage will be time-barred. *See also United States v. Simmonds,* 111 F.3d 737 (10th Cir.1997); *Calderon v. United States,* 112 F.3d 386 (9th Cir. 1997); *Peterson v. Demskie,* 107 F.3d 92 (2d Cir.1997); *Lindh v. Murphy,* 96 F.3d 856 (7th Cir.1996), *rev'd in part,* 521 U.S. 320, 117 S.Ct. 2059, 138 L.Ed.2d 481 (1997). In determining what a "reasonable time" is, the Fifth Circuit joined the Seventh, Ninth and Tenth Circuits holding that, " ... one year commencing on April 24, 1996, presumptively constitutes a reasonable time for those prisoners whose convictions had become final prior to the enactment of the AEDPA to file for relief..." *United States v. Flores,* 135 F.3d at 1006; *See also Lindh v. Murphy,* 96

F.3d at 866; *Calderon v. United States,* 112 F.3d at 390; *United States v. Simmonds,* 111 F.3d at 745–46; *Andrews v. Johnson,* 976 F.Supp. 527, 530–32 (N.D.Tex.1997); *Dickerson v. Stalder,* 975 F.Supp. 831, 833 (E.D.La. 1997); *Mitchell v. Cain,* 971 F.Supp. 1064, 1066 (W.D.La.1997); *Burns v. Morton,* 970 F.Supp. 373, 375 (D.N.J.1997); *Kapral v. United States,* 973 F.Supp. 495, 499–500 (D.N.J.1997); *Martin v. Jones,* 969 F.Supp. 1058, 1061 (M.D.Tenn.1997); *United States v. Jones,* 963 F.Supp. 32, 34 (D.D.C.1997); *United States v. Vancol,* 972 F.Supp. 833, 835 (D.Del.1997); *Zuluaga v. United States,* 971 F.Supp. 616, 619 (D.Mass.1997); *Duarte v. Hershberger,* 947 F.Supp. 146, 149 (D.N.J. 1996); *Flowers v. Hanks,* 941 F.Supp. 765, 771 (N.D.Ind.1996); *Smith v. United States,* 945 F.Supp. 1439, 1441 (D.Colo.1996). Accordingly, no federal habeas petition filed before the 24th of April 1997, will be deemed time-barred pursuant to Title 28 U.S.C. § 2244(d).

■ The Respondent now argues that because Petitioner's third state application for writ of habeas corpus was dismissed as an abuse of the writ pursuant to Article 11.07 § 4 of the Texas Code of Criminal Procedure by the Texas Court of Criminal Appeals, it was not "properly filed" within the meaning of Title 28 U.S.C. § 2244(d)(2). Therefore, Petitioner's third state application did not activate the tolling provision of Title 28 U.S.C. § 2244(d)(2) and the one (1) year period that Petitioner had to file this federal Application has expired. Respondent's argument hinges on the meaning of "properly filed" within Title 28 U.S.C. § 2244(d)(2).

The Court is mindful that the AEDPA is not the best example of statutory drafting. *See Lindh v. Murphy,* at ——, 117 S.Ct. at 2068 ("All we can say is that in a world of silk purses and pigs' ears, the Act is not a silk purse of the art of statutory drafting"). This Court nevertheless concludes, based on the plain meaning of the language contained in Title 28 U.S.C. § 2244(d)(2), that Petitioner's third state application for writ of habeas corpus in state court served to toll the AEDPA's one (1) year statute of limitations.

## I.

### RESPONDENT INTERPRETS "PROPERLY FILED" UNDER 28 U.S.C. § 2244(d)(2) TO INCLUDE "NON-FRIVOLOUS"

Title 28 U.S.C. § 2244(d)(2) provides that the time during which a "properly filed" application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending shall not be counted toward any period of limitation under this subsection. Respondent has argued that the phrase "properly filed" in this tolling provision does not simply mean that an application for State post-conviction or other collateral review was filed pursuant to the proper statute and otherwise in satisfaction of procedural requirements, such as timeliness and proper place of filing. This is the meaning most commonly imputed to the phrase "properly filed" in other contexts. *See, for example,* 37 C.F.R. § 252.4(e) ("properly filed" refers to timeliness of filing claims with Copyright Office); *Rothman v. United States,* 508 F.2d 648, 651 (3d Cir. 1975) ("properly filed" notice of appeal discussed in terms of place, time, procedural requirements); *Cohen v. S.U.P.A. Inc.,* 814 F.Supp. 251, 258–59 (N.D.N.Y.1993) (discussing requirements for "properly filed" EEOC complaint); *Dells, Inc. v. Mundt,* 400 F.Supp. 1293, 1295 (S.D.N.Y.1975) (addressing procedural requirements for "proper filing" under FED. R. CIV. PRO. 15). *Also see Heckler v. Edwards,* 465 U.S. 870, 880, 104 S.Ct. 1532, 1538, 79 L.Ed.2d 878 (1984), *Thermtron Products, Inc. v. Hermansdorfer,* 423 U.S. 336, 344, 96 S.Ct. 584, 590, 46 L.Ed.2d 542 (1976); and, *Herrera v. Collins,* 506 U.S. 390, 441, 113 S.Ct. 853, 881, 122 L.Ed.2d 203 (1993). Instead, Respondent urges that "properly filed" carries an additional meaning in the context of the AEDPA: that the application for State post-conviction or other collateral review is ultimately found non-frivolous by the reviewing court at the state level.

As discussed below, the present case involves a state application for writ of habeas corpus that was dismissed for abuse of the writ pursuant to Article 11.07 § 4 of the Texas Code of Criminal Procedure. However-

er, if "properly filed" also means "non-frivolous," as Respondent argues, then the tolling provision contained in Title 28 U.S.C. § 2244(d)(2) would not apply to any case in which the state court ultimately determined the state petition for post-conviction or collateral review was frivolous, whether or not the state court also determined that the petitioner had abused the writ. After careful consideration, the Court has concluded that the requirement of a "properly filed" application for State post-conviction or other post-collateral review in 28 U.S.C. § 2244(d)(2) of the AEDPA does not contemplate that the state petition must also be "non-frivolous."

## II.

### THE TEXT'S PLAIN MEANING DICTATES THAT "PROPERLY FILED" DOES NOT MEAN "NON–FRIVOLOUS."

■ In matters of statutory interpretation, this Court's duty is to construe a statute in a manner that is consistent with the intent of Congress as expressed in the plain meaning of its language. *Sutton v. U.S.,* 819 F.2d 1289 (5th Cir.1987). The most persuasive evidence of Congressional intent is the wording of a statute. *Perry v. Commerce Loan Co.,* 383 U.S. 392, 400, 86 S.Ct. 852, 857, 15 L.Ed.2d 827 (1966). Hence, the goal of statutory construction is to ascertain legislative intent through the plain language of the statute without looking to legislative history or other extraneous sources. *Matter of Stone,* 10 F.3d 285 (5th Cir.1994).

■ The Court observes that the text of Title 28 U.S.C. § 2244(d)(2), which creates a tolling provision to the one (1) year statute of limitations created in Title 28 U.S.C. § 2244(d)(1), contains no language restricting the application of the tolling provision to those applications for post-conviction or other collateral review at the State level that are ultimately determined to have merit. To the contrary, for the tolling provision to apply, Title 28 U.S.C. § 2244(d)(2) requires only that the State application for post-conviction or other collateral review be "properly filed":

[t]he time during which *a properly filed application for State post-conviction or*

*other collateral review* with respect to the pertinent judgment or claim is pending shall not be counted toward any period of limitation under this subsection.

(Emphasis added). This Court concludes that the language of Title 28 U.S.C. § 2244(d)(2) itself is not ambiguous as to the condition that triggers the tolling provision. As such, this Court is not at liberty to generate an ambiguity as to the meaning of the phrase "properly filed." A statute may not be modified by judicial construction where its meaning is plain. *Rawlins v. National Transp. Safety Board,* 837 F.2d 1327 (5th Cir.1988).

In a different context, the United States Supreme Court considered and rejected a statutory construction of the AEDPA that produced an ambiguity in the text where none was self-evident. In *Lindh v. Murphy,* at ——, —— – ——, 117 S.Ct. at 2059, 2062–63, the Supreme Court discussed the intent of Congress regarding the retroactive application of the AEDPA. The Court rejected a reading of Title 28 U.S.C. § 2261(b) that attempted to create an ambiguity in a clause contained in Title 28 U.S.C. § 2261(b), and in so doing went beyond the plain meaning of the text. The clause at issue was as follows: "if a state establishes... a mechanism for the appointment, compensation, payment, and of reasonable litigation expenses of competent counsel in State post-conviction proceedings brought by indigent prisoners..." Respondent, the State of Wisconsin, argued that this text was ambiguous because it was unclear as to those states that had already established the described mechanism. According to the respondent, § 107(c) of the AEDPA, which provides that "Chapter 154 ...shall apply to cases pending on or after the date of enactment of this Act," was then added to eliminate the ambiguity contained in Title 28 U.S.C. § 2261(b).

The Supreme Court rejected this argument because only a strained reading of Title 28 U.S.C. § 2261(b) could generate an ambiguity in the use of the word "establishes." Further, Congress could have resolved any such ambiguity far more simply than adding another section to the Act; it could have merely added a few words to Title 28 U.S.C. § 2261(b) itself:

> [A]nyone who has seen such an ambiguity lurking could have dispatched it in a far simpler and straightforward fashion than enacting § 107(c); all the drafter would have needed to do was to insert three words into § 2261(b) to make it refer to a State that "establishes or has established ..a mechanism." It simply isn't plausible that anyone so sensitive as to find the unlikely ambiguity would be so delphic as to choose § 107(c) to fix it.

*Lindh v. Murphy,* at —— – ——, 117 S.Ct. at 2065–66. Analogously, this Court concludes that Respondent's construction of "properly filed" in Title 28 U.S.C. § 2244(d)(1) assigns to Congress a "delphic" approach to statutory construction. As the Supreme Court noted with respect to the wording of Title 28 U.S.C. § 2261(b) of the AEDPA, the drafters simply needed to insert a few words into the text of Title 28 U.S.C. § 2244(d)(2). If Congress had so intended, Title 28 U.S.C. § 2244(d)(1) could have applied only to petitioners who raised "properly filed *and non-frivolous*" or "properly filed *and meritorious*" applications at the state level. Congress did not insert these words.

Other district courts, as well as the Court of Appeals for the Third Circuit, have also concluded that "properly filed" in Title 28 U.S.C. § 2244(d)(2) simply means that the state court application for collateral review must comply with all applicable procedural requirements in order to toll the one year statute of limitations for federal habeas corpus review. *See Lovasz v. Vaughn,* 134 F.3d 146, 148–49 (3d Cir.1998); *Hughes v. Irvin,* 967 F.Supp. 775 (E.D.N.Y.1997). Both of these decisions are discussed in a subsequent section of this order.

This Court concludes that the plain meaning of Title 28 U.S.C. § 2244(d)(2) of the AEDPA leads to the conclusion that a "properly filed" application for state post-conviction or collateral review is one that complies with all applicable procedural requirements. The Supreme Court has held that where the terms of a statute are determined to be unambiguous, judicial inquiry should go no further unless rare and exceptional circum-

stances exist. *Freytag v. C.I.R.*, 501 U.S. 868, 873–74, 111 S.Ct. 2631, 115 L.Ed.2d 764, (1991).

## III.

## ASSUMING IN *ARGUENDO* THAT THE TEXT'S MEANING IS NOT PLAIN, PRINCIPLES OF STATUTORY CONSTRUCTION DICTATE THAT "PROPERLY FILED" DOES NOT ALSO MEAN "MERITORIOUS."

As already discussed, this Court has concluded that the meaning of Title 28 U.S.C. § 2244(d)(2) is plain from the text, which includes no requirement that the state application for post-conviction or collateral review be "non-frivolous" or "meritorious" in order to toll the statute of limitations contained in the AEDPA. However, assuming *in arguendo* that the requirements implied by "properly filed" for purposes of triggering the tolling provision could be construed as ambiguous, principles of statutory construction dictate that "properly filed" should be construed to mean that the petitioner's state-level application was filed pursuant to the proper statute and otherwise in satisfaction of procedural requirements, such as timeliness and proper place of filing.

### A. *Congress is Not Presumed to Act Counterproductively.*

The United States Supreme Court, in setting forth principles to govern statutory construction, has held:

> There is, of course, no more persuasive evidence of the purpose of a statute than the words by which the legislature undertook to give expression to its wishes. Often these words are sufficient in and of themselves to determine the purpose of the legislation. In such cases we have followed their plain meaning. When that meaning has led to absurd or futile results, however, this Court has looked beyond the words to the purpose of the act.

*Perry v. Commerce Loan Co.*, 383 U.S. 392, 400, 86 S.Ct. 852, 15 L.Ed.2d 827 (1966) (*quoting United States v. American Trucking Ass'ns.*, 310 U.S. 534, 543, 60 S.Ct. 1059, 84 L.Ed. 1345 (1940)); *See Ecee, Inc. v.*

*Federal Energy Regulatory Commission,* 611 F.2d 554, 563–64 (5th Cir.1980); *Worthy v. United States,* 328 F.2d 386, 391 (5th Cir.1964) ("A meaning will not be attributed to statutory language which would lead to an abuse or unjust result.")

Moreover, the Supreme Court in *Perry v. Commerce Loan Co.* not only held that courts should reject statutory interpretations producing unjust or absurd results; it also held that courts should reject statutory interpretations that lead to results that are counterproductive to the overall purposes of the statute:

> Frequently, however, even when the plain meaning did not produce absurd results but merely an unreasonable one "plainly at variance with the policy of the legislation as a whole" this Court has followed that purpose, rather than the literal words.

*Perry,* at 400, 86 S.Ct. at 857. If one assumes that the phrase "properly filed" includes the requirement that the state application be "meritorious" or "non-frivolous," one runs afoul of this fundamental principle of statutory construction: that Congress cannot be presumed to act in a manner counterproductive to the purposes of the statute as a whole.

The Third Circuit Court of Appeals in *Lovasz v. Vaughn,* 134 F.3d 146, 148–49 (3d Cir.1998) and the Federal District Court for the Eastern District of New York in *Hughes v. Irvin,* 967 F.Supp. 775, 778–79 (E.D.N.Y. 1997), describe at least two (2) unreasonable consequences that would flow from a construction of the phrase "properly filed" in Title 28 U.S.C. § 2244(d)(2) to include "meritorious" or "non-frivolous." First, as made clear in *Lovasz,* this construction violates principles of comity underlying the federal system generally and the AEDPA specifically. Second, as made clear by both *Lovasz* and *Hughes,* requiring the federal district court to evaluate whether a preceding state court application for writ of habeas corpus was meritorious leads to an unworkable standard for applying the tolling provision contained in the AEDPA, one that intrudes into the system devised by the state to review post-conviction requests for collateral review.

1. *Erosion of Distinct State and Federal Habeas Rights in the Federal System Should be Avoided.*

█ The prisoner's right to federal habeas corpus review is distinct from whatever rights to collateral review may be afforded to him in state court. Whatever state applications for collateral review the Petitioner may have filed in the present case, and whatever the merit of those applications, the federal application at issue represents his first request for federal review. A petitioner's right to collateral review on the state and federal levels are distinct and should not jeopardize one another. Moreover, principles of comity protect the interest of the state to provide a forum for the grievances of its prisoners before they seek redress in federal court. This Court concludes that an interpretation of the AEDPA by this Court that would jeopardize either the prisoner's right to distinct state and federal collateral review of grievances, or the state's interest in addressing a prisoner's grievances before he files in federal court, should be rejected.

The Third Circuit Court of Appeals in *Lovasz v. Vaughn* rejected a reading of Title 28 U.S.C. § 2244(d)(2) that included "meritorious" in the definition of "properly filed," in part because this interpretation did violence to the integrity of the distinct redress provided to the prisoner by the state and federal systems:

In our federal system, "the States should have the first opportunity to address and correct alleged violations of state prisoner's federal rights." *Coleman v. Thompson,* 501 U.S. 722, 731, 111 S.Ct. 2546, 2555, 115 L.Ed.2d 640 (1991). Such respect for the states has given rise to the well-established rule that a federal court should not find a state prisoner's claims procedurally barred from federal habeas review unless state law "clearly foreclose[s]" review of the claims. *Toulson v. Beyer,* 987 F.2d 984, 987 (3d Cir.1993); *see Banks v. Horn,* 126 F.3d 206, 211 (3d Cir.1997); *Doctor v. Walters,* 96 F.3d 675, 683 (3d Cir.1996).

*Lovasz,* 134 F.3d at 148; *See also Ex Parte Royall,* 117 U.S. 241, 6 S.Ct. 734, 29 L.Ed. 868 (1886). The *Lovasz* Court found in the Congressional intent underlying the AEDPA the desire to protect state criminal proceedings and post-conviction relief from federal intrusion:

Moreover, in enacting AEDPA, of which § 2244(d) is a part, Congress intended to "reduce federal intrusion into state criminal proceedings." *Banks,* 126 F.3d at 213.

*Lovasz,* 134 F.3d at 148. On the basis of principles of federal-state comity and Congressional intent, the *Lovasz* Court concluded that a reading of Title 28 U.S.C. § 2244(d)(2) requiring the state application to be meritorious would invade the state judicial system's treatment of a prisoner's claims:

Thus, if a state allows petitioners to file second or subsequent petitions for post-conviction relief, federal courts should not undermine the state's decision by refusing to toll the one-year period of limitation of § 2244(d)(1) where a second or subsequent petition is pending in the state court system. Nor should we discourage petitioners from exhausting all their claims in state court, even by means of a second or subsequent petition for post-conviction relief where permissible under state law, before seeking habeas review in federal court.

*Lovasz,* 134 F.3d at 148. Specifically, *Lovasz* concluded that if a federal court is required to assess the merit of a state petition for collateral review, that assessment will be arbitrary and will intrude into the system devised by the state to provide post-conviction collateral review. As the United States Supreme Court observed in *Preiser v. Rodriguez,* 411 U.S. 475, 491–92, 93 S.Ct. 1827, 36 L.Ed.2d 439 (1973):

It is difficult to imagine an activity in which a State has a stronger interest, or one that is more intricately bound up with state laws, regulations, and procedures, than the administration of its prisons...Since these internal problems of state prisons involve issues so peculiarly within state authority and expertise, the States have an important interest in not being bypassed in the correction of those problems.

### 2. *"Frivolous" is Difficult to Define with Respect to Pro Se Petitioners.*

■ This Court is required to construe the pleadings of a *pro se* inmate plaintiff liberally. The United States Supreme Court holds allegations of a *pro se* complaint to less stringent standards than formal pleadings drafted by lawyers. *Haines v. Kerner,* 404 U.S. 519, 92 S.Ct. 594, 30 L.Ed.2d 652 (1972). *Pro se* pleadings are to be construed generously. *U.S. v. Flores,* 135 F.3d 1000 (5th Cir.1998) (extensive motions and supplementary pleadings asserting numerous and varied assertions of error to be construed generously in light of petitioner's *pro se* status). Further, the distinction between "frivolous" and "nonfrivolous" pleadings becomes problematic in the context of prisoners' petitions. Rule 11 of the Federal Rules of Civil Procedure, for example, requires that "the attorney or unrepresented party" certify "to the best of the person's knowledge, information, and belief" that the claim filed is factually and legally non-frivolous. The "knowledge, information, or belief" of an inmate who lacks legal sophistication could cause him to file a claim in good faith which, if filed by an attorney, would constitute a frivolous pleading. As the United States Supreme Court concluded in *Haines:* "although we intimate no view whatever on the merits of petitioner's allegations, we conclude that he is entitled to an opportunity to offer proof." 404 U.S. at 521, 92 S.Ct. 594.

### 3. *An Unworkable and Arbitrary Standard for Application of Tolling Provision Results.*

As both *Lovasz* and *Hughes* concluded, a rule that required the federal district court to inquire into the merits of a second or subsequent state petition for post-conviction or collateral review to determine if it was "properly filed" could become problematic. *Lovasz* adopted the reasoning of *Hughes v. Irvin,* 967 F.Supp. 775, 778–79 (E.D.N.Y. 1997), which considered the practical consequences of requiring a federal district court to assess the merits of a state petition before applying the tolling provision of the AEDPA. *Hughes* considered whether a seventh motion for post-conviction relief constituted "a prop-erly filed application" under § 2244(d)(2). *Hughes* asked whether a petitioner's seventh state-court motion could be considered "a properly filed application," and if so, at what point in time:

Was it "improperly filed" because the lower court found it meritless? Did it become "properly filed" when the state appellate court reversed and remanded, only to lose that status when the lower court again denied it on the merits? *Id.* at 779. While such questions may be intriguing or provocative, we, like the *Hughes* court, find them both inappropriate and unnecessary in determining whether the petition for post-conviction relief was properly filed.

*Lovasz,* 134 F.3d at 148–49, citing *Hughes,* 967 F.Supp. at 778–79. The Third Circuit concluded in *Lovasz* that only a plain reading of § 2244(d)(2) could lead to the proper result: "After all, Congress chose the phrase 'a properly filed application,' one into which we do not read any requirement that the application be nonfrivolous." *Lovasz,* 134 F.3d at 148–49. *Lovasz* spelled out the plain reading of § 2244(d)(2) as follows:

We believe that "a properly filed application" is one submitted according to the state's procedural requirements, such as the rules governing the time and place of filing.... Further, we reject the notion that a meritless [state court petition for collateral review] cannot constitute "a properly filed application" under § 2244(d)(2). Rather, in considering whether a petition for post-conviction relief is properly filed, district courts should not inquire into its merits.

*Id.* Likewise, the *Hughes* court held that it was

...persuaded that "properly filed," as used in § 2244(d)(2), means that in order to trigger the tolling mechanism, a petitioner's collateral review application must be submitted in accordance with any applicable procedural requirements, such as notice to the respondent, correct place of filing, and timeliness of the motion.

The Court rejects the proposition that a seemingly frivolous collateral attack is not "properly filed" for purposes of tolling the one-year statute of limitations. While the

lower court first denied petitioner's seventh motion without a hearing, the Appellate Division reversed and remanded for an evidentiary hearing.

*Hughes*, 967 F.Supp. at 778–79. Assuming *arguendo* that the meaning of the phrase "properly filed" in Title 28 U.S.C. § 2244(d)(2) is ambiguous, this Court agrees with the conclusion reached in *Lovasz* and *Hughes*: "properly filed" must be construed to mean that the state-level application for post-conviction or collateral relief was filed in accordance with the state's procedural requirements, such as the rules governing the time and place of filing. Otherwise, a reading of "properly filed" in Title 28 U.S.C. § 2244(d)(2) that includes "meritorious" or "non-frivolous" would disrupt the comity that must exist between the state and federal systems in order to preserve the distinct federal and state rights of habeas corpus, and would create an unworkable and disruptive standard for federal courts attempting to ascertain whether a state petition was "properly filed."

**B.** **Statute in Derogation of a Common Law Right Must be Construed Strictly**

■■■ "[S]tatutes which invade the common law . . . are to be read with a presumption favoring the retention of long-established and familiar principles, except when a statutory purpose to the contrary is evident." *Isbrandtsen Co. v. Johnson*, 343 U.S. 779, 783, 72 S.Ct. 1011, 1014, 96 L.Ed. 1294 (1952); *Astoria Federal Savings & Loan Assn. v. Solimino*, 501 U.S. 104, 108, 111 S.Ct. 2166, 2169–70, 115 L.Ed.2d 96 (1991). In such cases, Congress does not write upon a clean slate. *Astoria Federal Savings & Loan Assn. v. Solimino*, 501 U.S. at 108, 111 S.Ct. at 2169–70. In order to abrogate a common-law principle, the statute must "speak directly" to the question addressed by the common law. *Mobil Oil Corp. v. Higginbotham*, 436 U.S. at 625, 98 S.Ct. at 2015; *Milwaukee v. Illinois*, 451 U.S. 304, 315, 101 S.Ct. 1784, 1791, 68 L.Ed.2d 114 (1981). Where an ambiguity exists in a statute that restricts a common law right, the ambiguity must be resolved in favor of preserving the common law right. *U.S. v. State*

*of Texas*, 507 U.S. 529, 533, 113 S.Ct. 1631, 123 L.Ed.2d 245 (1993).

This Court has concluded that the plain meaning of the phrase "properly filed" in the text of Title 28 U.S.C. § 2244(d)(2) is clear. However, assuming *in arguendo* that the phrase "properly filed" is in any sense ambiguous, the Court concludes that this phrase must be construed to mean that the state-level application for post-conviction or collateral relief was filed in accordance with the state's procedural requirements, such as the rules governing the time and place of filing. An interpretation of "properly filed" imposing the additional requirement that the state court petition be "meritorious" or "non-frivolous" would violate a fundamental principle of statutory construction because it would resolve an ambiguity in favor of the interpretation that is more restrictive of a common law right.

**1.** **No Legislative History Exists Regarding the Phrase "Properly Filed."**

In order to apply the above-cited principle of statutory construction, the Court must first ascertain whether clear indications of legislative intent exist to suggest that Congress intended "properly filed" to mean "meritorious." As the Supreme Court held in *United States v. State of Texas*, statutes which restrict common law rights are to be read with a presumption favoring the retention of long-established and familiar principles, *except when statutory purposes to the contrary are evident*. *United States v. State of Texas*, 507 U.S. at 533, 113 S.Ct. 1631.

As already discussed, this Court has concluded that the plain language of the statute evidences the opposite legislative intent: that the phrase "properly filed" was used without the addition of "meritorious" or "non-frivolous" because Congress did not intend to further restrict the petitioner's right to federal habeas corpus review. Even if one rejects the argument that the text provides a clear indication of Congressional intent, however, the legislative history of the AEDPA provides no support for the position that "properly filed" was intended to further restrict the right to federal habeas review by requiring a determination that the petitioner's state-level petition was meritorious. An

examination of the legislative history of the AEDPA led the court in *Hughes v. Irvin,* 967 F.Supp. 775, 778–79 (E.D.N.Y.1997), to the following conclusion:

> The Court's research failed to unearth any case law construing "a properly filed application," as that term is used in § 2244(d)(2). Nor does legislative history shed any light on what Congress intended by that restriction. See S.Rep. No. 104–179 (1995), reprinted in 1996 U.S.C.C.A.N. 924; H.R. Conf. Rep. No. 104–518 (1996), reprinted in 1996 U.S.C.C.A.N. 944.

*Hughes,* 967 F.Supp. at 778. This Court has also failed to unearth evidence of legislative intent, extrinsic to the text of Title 28 U.S.C. § 2244(d)(2) itself, that would provide any indication as to whether Congress intended to impute the phrase "properly filed" with a meaning beyond that normally attributed thereto: in accordance with procedural requirements, such as the rules governing the time and place of filing. As a result, this Court agrees with the conclusion reached in *Hughes,* that the legislative intent underlying the phrase "properly filed" cannot be ascertained with reference to extrinsic sources. The silence of the legislative record extrinsic to the statute means that, where the statute is ambiguous, this Court must adopt the meaning that is less restrictive of common law rights.

## 2. *The Right to Federal Habeas Corpus Review is a Common Law Right.*

The present day writ of habeas corpus has been called the "common law world's 'freedom writ'" and the "highest safeguard of liberty," *Smith v. Bennett,* 365 U.S. 708, 712, 81 S.Ct. 895, 6 L.Ed.2d 39 (1961). The purpose of the writ of habeas corpus, which can be traced in English law to as early as 1166, has been described as follows: "From its earliest days, the Supreme Court has emphasized the central role of the writ of habeas corpus in Anglo–American jurisprudence in protecting individual liberty." *Mojica v. Reno,* 970 F.Supp. 130, 158–59 (E.D.N.Y. 1997). The "great object of [the writ of habeas corpus] is the liberation of those who may be imprisoned without sufficient cause. It is in the nature of a writ of error, to examine the legality of the commitment."

*Ex Parte Watkins,* 28 U.S. (3 Pet.) 193, 202, 7 L.Ed. 650 (1830). The writ, along with the right to trial by jury, is among the most fundamental features distinguishing a free society from one in which unbridled and arbitrary imprisonment is used as an instrument of tyranny. *See Johnson v. United States,* 333 U.S. 10, 17 n. 8, 68 S.Ct. 367, 92 L.Ed. 436 (1948).

█ The Constitution as ratified in 1789 included the Suspension Clause, but did not specify whether Congress was forbidden to suspend the availability of the writ for those seeking relief in state courts or in federal courts. In the aftermath of the Civil War, the Reconstruction Congress decided that federal review of state convictions was necessary to protect individuals, particularly former slaves and Union soldiers, from illegal state imprisonment. The Judiciary Act of 1867 extended the writ to "all cases where any person may be restrained of his or her liberty in violation of the constitution, or of any treat or law of the United States." Judiciary Act, ch. 28, § 1, 14 Stat. 385, 385 (1867). The 1867 Act, "with some important modifications, still provides the basic framework for the current regime of federal habeas review of state convictions. This regime permits, with some recent exceptions, state prisoners to relitigate properly preserved federal issues in federal court after such issues are fully exhausted in the state system." *See* Jordan Steiker, *Incorporating the Suspension Clause: Is There a Constitutional Right to Federal Habeas Corpus for State Prisoners?,* 92 MICH.L.REV. 862, 872–73, 883 (1994). Clearly, the federal right of petition for writ of habeas corpus constitutes a fundamental common law right distinct from any right to post-conviction collateral review that a prisoner may possess at the state level.

## 3. *The AEDPA Limitations Provision Derogates the Common Law Right of Habeas Corpus; Therefore, If the Text is Regarded as Ambiguous, Title 28 U.S.C. § 2244 Must be Read Restrictively.*

Prior to the passage of the AEDPA, no statute of limitations had ever been imposed

on the federal writ of habeas corpus. *See United States v. Smith,* 331 U.S. 469, 475, 67 S.Ct. 1330, 91 L.Ed. 1610 (1947) ("habeas corpus provides a remedy for jurisdictional and constitutional errors at the trial without limit of time."); *Heflin v. United States,* 358 U.S. 415, 420, 79 S.Ct. 451, 3 L.Ed.2d 407 (1959) (Stewart, J., concurring) (no statutes of limitations). Title 28 U.S.C. § 2244 therefore imposes a restriction on a common law right where none existed prior to the passage of the Act. As noted earlier, there was a thoughtful reason for the restriction: the desire of Congress to ensure that federal courts do not intrude improperly into the efforts of the states to provide their own system of post-conviction collateral review. Nonetheless, the provisions creating the statute of limitations in the AEDPA, while constitutionally valid, must be construed restrictively where the statute itself and the legislative history are silent. *United States v. State of Texas,* 507 U.S. at 533, 113 S.Ct. 1631. This is especially true in the present case, since there is a challenge to Petitioner's right to raise his first federal application for writ of habeas corpus by challenging the legitimacy of the state court petition that preceded it.

The Supreme Court has emphasized that restrictions on a petitioner's initial federal application are to be evaluated with a high level of scrutiny, since such restrictions threaten a citizen's right to exercise his or her right to the "Great Writ" in the first instance. In *Lonchar v. Thomas,* 517 U.S. 314, 116 S.Ct. 1293, 134 L.Ed.2d 440 (1996), the Court held that "[d]ismissal of a first federal habeas petition is a particularly serious matter, for that dismissal denies the petitioner the protections of the Great Writ entirely, risking injury to an important interest in human liberty." 517 U.S. at 324, 116 S.Ct. 1293. *See also Preiser v. Rodriguez,* 411 U.S. 475, 500, 93 S.Ct. 1827, 36 L.Ed.2d 439 (1973) (habeas corpus is "sole federal remedy" for challenging fact or duration of confinement). The Court concludes that, if Title 28 U.S.C. § 2244(d)(2) is construed as ambiguous, principles of statutory interpretation dictate that the phrase "properly filed" in connection with limitations be construed

restrictively, so as not to unjustifiably derogate a longstanding common law right.

The Court is mindful that decisions such as *Valentine v. Senkowski,* 966 F.Supp. 239, 240–41 (S.D.N.Y.1997), have concluded that the phrase "properly filed" also contemplates that the state court application must be non-frivolous in order to toll the one-year federal statute of limitations. The *Valentine* court explained that the legislative intent of the AEDPA would be frustrated if the one-year limitations period could be repeatedly tolled by meritless state court petitions for collateral review.

This Court concludes that *Valentine v. Senkowski* reads too much into the phrase "properly filed" used in Title 28 U.S.C. § 2244(d)(2). *Valentine* resolved what it apparently perceived as ambiguity in the use of the phrase "properly filed" in favor of the reading that results in a more extensive curtailment of a fundamental common law right. However, *Valentine* fails to justify its conclusion that "properly filed" should be construed to imply "meritorious." According to its own terms, *Valentine* opts for this reading because a plain reading of "properly filed" could result in the frustration of the purposes of the AEDPA through the filing of endless state court petitions. Although the *Valentine* opinion is carefully written, this Court respectfully submits that its basic premise results in an erroneous reading of Title 28 U.S.C. § 2244(d)(2).

Arguably, if the sole purpose of the AEDPA were the speedy disposition of applications for federal writ of habeas corpus, then any reading that restricted this right would constitute the proper interpretation of the Act. In fact, the AEDPA seeks to balance the speedy disposition of applications for federal writ of habeas corpus with the preservation of the right to the writ. As such, one cannot justify an interpretation of the statute by declaring that the interpretation serves to get rid of more cases regardless of all else.

This Court respectfully submits that *Valentine* erred by declaring an unambiguous phrase in the statute ambiguous, and then by resolving the ambiguity in favor of the reading that places a greater restriction on the common law right, without providing any

specific legislative history to justify this choice. The inherent difficulty of ascertaining what constitutes a "frivolous" filing in a prisoner case, coupled with the tremendous case load from prisoners, could well lead federal courts to conclude that the tolling provision has not been satisfied any time that the state court concludes the state petition lacked merit. Such an expansion of the holding in *Valentine* could virtually repeal the tolling provision found in Title 28 U.S.C. § 2244(d)(2). *See Hughes,* 967 F.Supp. at 778–79 ("The writ of habeas corpus would be emasculated if the factual determination of a state court could preclude a petitioner's access to federal court to challenge that very finding.")

## IV.

### APPLICATION OF THE PLAIN MEANING OF TITLE 28 U.S.C. § 2244(d)(2) TO PETITIONER'S CASE

The tolling provision contained in Title 28 U.S.C. § 2244(d)(2) should protect an inmate from the loss of his or her right to federal collateral review while (s)he waits for a state court decision, even where the state court ultimately determines that the claim lacks merit. This Court construes Title 28 U.S.C. § 2244(d)(2) to toll the one-year limitations period where an inmate files a procedurally proper state petition which is subsequently found to lack merit.

■ On March 12, 1997, the state court dismissed Petitioner's second state-court petition for writ of habeas corpus, which he filed on November 15, 1996, for abuse of the writ under Article 11.07 § 4 of the Texas Code of Criminal Procedure which reads:

(a) If a subsequent application for writ of habeas corpus is filed after final disposition of an initial application challenging the same conviction, a court may not consider the merits of or grant relief based on the subsequent application unless the application contains specific facts establishing that:

(1) the current claims and issues have not been and could not have been presented previously in an original application or in a previously consid-

ered application filed under this article because the factual or legal basis for the claim was unavailable on the date the applicant filed the previous application; or

(2) by a preponderance of the evidence, but for a violation of the United States Constitution, no rational juror could have found the applicant guilty beyond a reasonable doubt.

(b) For purposes of Subsection (a)(1), a legal basis of a claim is unavailable on or before a date described by Subsection (a)(1) if the legal basis is not recognized by and could not have been reasonably formulated form a final decision from the United States Supreme Court, a court of appeals of the United States, or a court of appellate jurisdiction of this state on or before that date.

(c) For purposes of Subsection (a)(1), a factual basis of a claim is unavailable on or before a date described by (a)(1) if the factual basis was not ascertainable through the exercise of reasonable diligence on or before that date.

As this Texas statute makes clear, the state court reviewed Petitioner's claim in light of the fact that Petitioner had already filed two (2) state applications for writ of habeas corpus several years before. The state court concluded that there was no factual or legal argument in Petitioner's third application that did not exist at the time that Petitioner filed his first and second application, and dismissed the third application on this basis. On the date that Petitioner filed his third state court application, the issues he raised either had already been considered by the state court when he filed his first and second application, or the factual and legal arguments had been available when he filed his first and second state application. This calls into question whether the third application was filed in good faith. *See Ex Parte Barber,* 879 S.W.2d 889, 891 (Tex.Crim.App. 1994). This Court cannot conclude, however, that the state court's determination on this issue precludes application of the clear language of Title 28 U.S.C. § 2244(d)(2).

This Court concludes that the tolling provision contained in Title 28 U.S.C. § 2244(d)(2) of the AEDPA means what it says: a properly filed petition for habeas corpus review by a state court tolls the one-year statute of limitations imposed on prisoners by the AEDPA to seek federal habeas review. The AEDPA became effective on April 24, 1996, and Petitioner is afforded a one (1) year grace period from that date to file his federal Application. The time period from April 24, 1996, to September 9, 1996, approximately 139 days, was not tolled because Petitioner had not yet filed his third state application triggering the tolling provision. Petitioner awaited a result from his third state court habeas corpus application from September 10, 1996 until April 30, 1997, or approximately 232 days. Title 28 U.S.C. § 2244(d)(2) of the AEDPA dictates that the one (1) year statute of limitations was tolled during this period. It appears Petitioner had 226 days from the 30th of April 1997, to file his federal Application. Since Petitioner filed his federal application for writ of habeas corpus on the 21st of August 1997, Petitioner was well within the AEDPA's one (1) year statute of limitations. Therefore, Respondent's Motion to Dismiss pursuant to Title 28 U.S.C. § 2244(d) shall be denied and Respondent shall file an Answer to the merits of Petitioner's Application within thirty (30) days receipt of this Order. Accordingly,

IT IS ORDERED that Respondent's Motion to Dismiss Pursuant to Title 28 U.S.C. § 2244(d) is DENIED.

IT IS FURTHER ORDERED that the Respondent's shall file an Answer to the merits of Petitioner's Application within thirty (30) days receipt of this Order.