REVISED - August 23, 1999

UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT
_____

No. 98-10298
_____

FELIZ TALAZ VILLEGAS,

Petitioner-Appellant,

versus

GARY L. JOHNSON, Director, Texas Department of Criminal Justice, Institutional Division,

Respondent-Appellee.

_____

Appeal from the United States District Court
for the Northern District of Texas
_____

August 9, 1999

Before EMILIO M. GARZA, BENAVIDES, and DENNIS, Circuit Judges.

BENAVIDES, Circuit Judge:

Texas state prisoner Feliz Talaz Villegas appeals the dismissal of his petition for a writ of habeas corpus. The district court found that Villegas did not file his petition within the limitation period established by the Antiterrorism and Effective Death Penalty Act of 1996, Pub. L. No. 104-132, 110 Stat. 1214 (1996) ("AEDPA"). We conclude that the statute of limitations was tolled while Villegas's second state habeas petition was pending. Because we exclude that time period from the calculus, we find that Villegas's federal petition was timely. We therefore vacate the judgment and remand for further proceedings.

I

On March 21, 1991, a jury convicted Villegas of one count of

aggravated sexual assault and two counts of indecency with a child. The trial court sentenced him to a term of imprisonment for thirty-five years for the former count and a term of imprisonment for fifteen years for each of the latter counts. On September 21, 1992, the Court of Appeals affirmed Villegas's conviction. Villegas did not file a petition for discretionary review with the Texas Court of Criminal Appeals.

Villegas filed his first state habeas corpus petition on January 27, 1995. This application included a claim of insufficient evidence, a claim based on the use of extraneous offenses, a challenge to the indictment's charging three non-property offenses arising out of the same transaction, and an argument that the trial court erred in denying Villegas's motion for a new trial based on newly discovered evidence. This petition was denied without written order on June 28, 1995. Villegas filed a second state habeas corpus petition on March 26, 1996. The grounds raised in the second application were that Villegas was denied a complete copy of his trial court records and that he received ineffective assistance of counsel. In accordance with section 4 of article 11.07 of the Texas Code of Criminal Procedure, this petition was dismissed as successive or an abuse of the writ

on April 9, 1997, over one year after it was filed.

Pursuant to 28 U.S.C. § 2254, Villegas filed a petition for a writ of habeas corpus in federal district court on or about October 7, 1997. In support of this petition, Villegas claimed that he received ineffective assistance of counsel and that the trial court erred in denying his motion for a new trial based on newly discovered evidence. Because Villegas filed his petition after the effective date of AEDPA, its provisions govern his claims. *See Lindh v. Murphy*, 521 U.S. 320 (1997).

The respondent moved to dismiss the petition on the ground that it was barred by the statute of limitations set forth in 28 U.S.C. § 2244(d)(1), as amended by AEDPA. Villegas opposed the motion, relying on AEDPA's tolling provision, 28 U.S.C. § 2244(d)(2). He argued that the pendency of his second state petition had tolled the limitation period and that his federal petition was therefore timely. The magistrate judge to whom the matter was referred recommended that the petition be dismissed with prejudice as time-barred. In making this recommendation, the magistrate judge found that Villegas's successive state application had not been "properly filed" as that term is used in § 2244(d)(2) and that, as a consequence, its pendency had not tolled the limitation period. Villegas filed a written objection to the magistrate judge's recommendation. The district court subsequently adopted the magistrate judge's report and recommendation and dismissed Villegas's petition with prejudice. Villegas filed a timely notice of appeal, and the district court granted a

certificate of appealability for our consideration of the question whether Villegas's second state habeas corpus petition was "properly filed" for purposes of 28 U.S.C. § 2244(d)(2).

## II

Before AEDPA's enactment, a prisoner faced no strict time constraints in filing a petition for a writ of habeas corpus. *See Davis v. Johnson*, 158 F.3d 806, 809 n.4 (5th Cir. 1998). AEDPA amended 28 U.S.C. § 2244 to establish a one-year limitation period for filing a habeas petition in federal court. In most cases, the limitation period runs from "the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review." 28 U.S.C. § 2244(d)(1)(A). In *United States v. Flores*, 135 F.3d 1000 (5th Cir. 1998), however, we held that this one-year limitation period cannot be applied retroactively to extinguish claims that were technically time-barred prior to AEDPA's enactment. *Flores* established that a petitioner such as Villegas, whose conviction became final prior to AEDPA's enactment, is afforded one year following AEDPA's effective date, April 24, 1996, to file an application for a writ of habeas corpus.[1] *See id.* at 1006; *cf. Flanagan v. Johnson*, 154 F.3d 196 (5th Cir. 1998) (clarifying that AEDPA's enactment date is excluded from the computation of the one-year period applicable to petitions

---

[1]*Flores* dealt with the limitation period set forth in 28 U.S.C. § 2255, but relied on cases interpreting the similar provision of 28 U.S.C. § 2254. The holding in *Flores* applies to petitions filed under both § 2255 and § 2254. *See Flanagan v. Johnson*, 154 F.3d 196, 200 n.2 (5th Cir. 1998).

-4-

that would otherwise be time-barred as of April 24, 1996, such that petitions filed on or before April 24, 1997, are timely).

Villegas submitted his petition after April 24, 1997, but asserts that his filing did not fall outside the limitation period. Villegas relies on AEDPA's tolling provision, codified at 28 U.S.C. § 2244(d)(2), which states:

> The time during which a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending shall not be counted toward any period of limitation under this subsection.

In *Fields v. Johnson*, 159 F.3d 914 (5th Cir. 1998), we held that petitioners whose convictions became final before AEDPA's enactment may rely on this tolling mechanism during the pendency of a petition covered by § 2244(d)(2). Assessing the merit of Villegas's claim requires that we ascertain the meaning of "properly filed" as that term appears in § 2244(d)(2), as only properly filed applications will trigger the Act's tolling provision. Specifically, we must determine whether a successive state petition may fit within the scope of § 2244(d)(2).

Villegas argues that his second state habeas corpus petition was filed in accordance with Texas's procedural filing requirements and that the dismissal of that petition as successive has no bearing on whether it was properly filed. The respondent argues that Villegas's second state petition was not properly filed because it was dismissed as successive. The respondent asserts that allowing tolling based on the second petition would undermine the purpose of the limitation period by allowing a prisoner to file

endless state petitions while preserving his ability to file stale, but technically timely, federal petitions.

The majority of courts that have considered this issue have concluded that "'a properly filed application' is one submitted according to the state's procedural requirements, such as the rules governing notice and the time and place of filing." *Lovasz v. Vaughn*, 134 F.3d 146, 148 (3d Cir. 1998); *accord, e.g.*, *Souch v. Harkins*, 21 F. Supp. 2d 1083 (D. Ariz. 1998); *Galindo v. Johnson*, 19 F. Supp. 2d 697 (W.D. Tex. 1998); *Ellis v. Johnson*, 11 F. Supp. 2d 695 (N.D. Tex. 1998); *Hughes v. Irvin*, 967 F. Supp. 775 (E.D.N.Y. 1997). A handful of district courts have found instead that a properly filed application is one that is not frivolous, but these courts have offered little analysis to support their conclusion that the phrase "properly filed" connotes some measure of merit. *See Washington v. Gramley*, No. 97 C 3270, 1998 WL 171827 (N.D. Ill. Apr. 10, 1998); *Hill v. Keane*, 984 F. Supp. 157 (E.D.N.Y. 1997); *Valentine v. Senkowski*, 966 F. Supp. 239 (S.D.N.Y. 1997). We agree with the majority line of cases and, based on principles of statutory construction and concerns regarding comity and exhaustion, we hold that a "properly filed application" for § 2244(d)(2) purposes is one that conforms with a state's applicable procedural filing requirements.[2] We further hold that

---

[2]By procedural filing requirements, we mean those prerequisites that must be satisfied before a state court will allow a petition to be filed and accorded some level of judicial review. Such filing requirements are not limited to the rules governing notice and the time and place of filing and may include, for example, a requirement that the petitioner obtain judicial authorization for

Villegas's second petition, although dismissed as successive, was properly filed and thus tolled the applicable limitation period.

Neither AEDPA nor its legislative history explains which state filings qualify as properly filed applications. *See* S. Rep. No. 104-179 (1995), *reprinted in* 1996 U.S.C.C.A.N. 924; H.R. Conf. Rep. No. 104-518 (1996), *reprinted in* 1996 U.S.C.C.A.N. 944. Like the Third Circuit, we are reluctant to engraft a merit requirement into § 2244(d)(2) without some indication of congressional intent to do so. *See Lovasz*, 134 F.3d at 149 ("After all, Congress chose the phrase 'a properly filed application,' one into which we do not read any requirement that the application be non-frivolous."). That we deal here with a statute that constrains the right to seek a writ of habeas corpus also inclines us to resist an interpretation that goes beyond the plain meaning of § 2244(d)(2). Without a clear sign of congressional intent, this court ought not derogate that right by reaching for an overbroad interpretation. *See Galindo*, 19 F. Supp. 2d at 706-08; *cf. Lonchar v. Thomas*, 517 U.S. 314, 330 (1996) ("[G]iven the importance of a first federal habeas petition, it is particularly important that any rule that would deprive inmates of all access to the writ should be both clear and fair.").

We similarly refuse to find that a successive state application or one containing procedurally barred claims is *per se* improperly filed. Section 2244(d)(2) explicitly requires only that a state application be properly filed. Had Congress intended to

the filing.

-7-

condition tolling on a state court finding of merit, it could have drafted § 2244(d)(2) to exclude frivolous petitions from its scope. So too could Congress have crafted a provision that clearly withheld tolling from prisoners filing in state court successive petitions or petitions containing procedurally barred claims. Congress enacted AEDPA against a backdrop of federal habeas law dealing with procedurally barred claims. *See, e.g.*, *Coleman v. Thompson*, 501 U.S. 722, 750 (1991) (barring federal habeas review of claims defaulted in state court pursuant to an independent and adequate state procedural rule unless the petitioner can demonstrate cause and prejudice or a fundamental miscarriage of justice); *cf. Souch v. Harkins*, 21 F. Supp. 2d 1083, 1087-88 (D. Ariz. 1998) (observing that an extensive body of law governs federal habeas petitions raising procedurally barred claims and reasoning that, if Congress had sought to alter this legal landscape, it would have made such an intent clear). Congress also dealt with the problems raised by successive petitions at the same time that it drafted § 2244(d)(2). *See* 28 U.S.C. § 2244(a)-(b). That Congress nonetheless chose not to address successive state petitions or procedurally barred claims in § 2244(d)(2) convinces us all the more that we ought not assume an overly broad meaning of "properly filed."

Our close reading of § 2244(d)(2) also comports with principles of comity and concerns regarding exhaustion. The Supreme Court has stated that "the States should have the first opportunity to address and correct alleged violations of state

prisoner's federal rights." *Coleman*, 501 U.S. at 731.  AEDPA was an attempt on the part of Congress to "'reduce federal intrusion into state criminal proceedings,'" *Lovasz*, 134 F.3d at 148 (citation omitted), encourage claim exhaustion, *see* 28 U.S.C. §2254(b)(1), and accord greater deference to state court adjudications, *see* 28 U.S.C. §§ 2254(d)(1)-(2), (e)(1); *Gochicoa v. Johnson*, 118 F.3d 440, 444 (5th Cir. 1997); *Drinkard v. Johnson*, 97 F.3d 751, 767-69 (5th Cir. 1996).  Our interpretation of § 2244(d)(2) is in keeping with these statutory purposes.

With respect to comity concerns, we agree with the Third Circuit that "if a state allows petitioners to file second or subsequent petitions for post-conviction relief, federal courts should not undermine the state's decision by refusing to toll the one-year period of limitation of § 2244(d)(1) where a second or subsequent petition is pending in the state court system." *Lovasz*, 134 F.3d at 148.  AEDPA evinces no congressional intent to embroil federal courts in problematic determinations of the merit of state court filings.  *See id.* at 149 (finding a merit inquiry to be inappropriate and unnecessary); *Hughes v. Irwin*, 967 F. Supp. 775, 778-79 (E.D.N.Y. 1997) (highlighting the difficulties posed by a substantive merit inquiry).  Moreover, we see no reason to second-guess state legislatures' decisions regarding the disposition of state applications for post-conviction or other collateral review.

At this time, as when Villegas filed his second state petition, Texas places no absolute time or numerosity limitations on the filing of applications for a writ of habeas corpus after a

conviction not involving the imposition of the death penalty. *See* Tex. Crim. P. Code Ann. art. 11.07 (West Supp. 1999). Texas could have placed greater restraints on the time or number of filings by prisoners such as Villegas, *see, e.g., id.* art. 11.071 § 4 (establishing the time frame for filing a habeas application in a death penalty case), but it did not. So too, Texas could have enacted a statutory scheme precluding the filing of a successive petition without prior judicial authorization. *See, e.g.*, 28 U.S.C. § 2244(b)(3)(A)-(B) (conditioning the filing of a successive federal habeas petition on the authorization of such filing by a three-judge panel of the court of appeals);[3] Ind. R. Proc. Post-Conviction Remedies 1, § 12 (directing Indiana state courts to decline to authorize the filing of a successive petition unless the petition form and proposed successive petition demonstrate that the petitioner is entitled to relief). Nor did the State court refuse to accept Villegas's successive petition for filing, as it may do in certain circumstances. *See Lowe v. Scott*, 48 F.3d 873, 875 (5th

---

[3]The dissent argues that § 2244(b)(3) is a procedural filing requirement pertaining to successive petitions. We agree. From that fact, the dissent then leaps to the further conclusion that any state rule pertaining to successive petitions must also be a procedural filing requirement. This leap is unsupported in logic. Congress relied on a filing requirement to limit successive petitions. In contrast, some states, including Texas, have sought to discourage successive petitions by limiting the availability of relief, instead of prohibiting the actual filing of such applications. Section 4 of article 11.07 of the Texas Code of Criminal Procedure allows the filing of a successive petition but then requires judicial consideration of the application to ascertain whether it contains sufficient facts to allow the court to delve into the merits of the individual claims set forth in the petition.

Cir. 1995) (recognizing the abuse-of-the-writ doctrine which "allows the court after finding that petitioner has abused the writ, to refuse to accept or file the habeas petition absent a showing of cause that the contention could not have been raised in the prior proceeding"); *Ex parte Dora*, 548 S.W.2d 392, 394 (Tex. Crim. App. 1977) (delineating circumstances in which state court may decline to file an application for a writ of habeas corpus); *cf.* 28 U.S.C. § 1915(g) (barring civil actions by prisoners whose three or more previous actions were dismissed as frivolous and who are proceeding *in forma pauperis*); *id.* § 1915A (allowing a court to review prisoner complaints for frivolous claims and immune defendants prior to docketing); Tex. Crim. P. Code Ann. art. 11.07 § 5 ("The Court of Criminal Appeals may deny relief upon the findings and conclusions of the hearing judge without docketing the cause."). In fact, Texas law specifically contemplates the filing of successive applications. The Texas Code of Criminal Procedure, although sharply constraining Texas courts in their review of successive petitions, allows them to grant relief in limited instances, notwithstanding the filing of an earlier application. *See* Tex. Crim. P. Code Ann. art. 11.07(4) (delineating the circumstances in which a court may consider the merits of or grant relief based on a successive petition).[4] Thus, like Congress with

---

[4]Section 4 of article 11.07 precludes a grant of relief based on a successive petition, unless the petitioner demonstrates facts sufficient to fit within a statutory exception allowing relief. We view § 4 as a limitation on a Texas state court's ability to grant relief for a successive petition, as opposed to an absolute bar to the *filing* of such a petition. Although, pursuant to § 4, a Texas

AEDPA, Texas has established a policy regarding successive petitions. As that matter is left to the states--the first forum for resolution of habeas claims--we find it unlikely that Congress intended its tolling provision to result in indifference to, or even interference with, a given state's handling of petitions for post-conviction relief.

We agree with the Third Circuit that we should not embrace an interpretation of § 2244(d)(2) that would "discourage petitioners from exhausting all their claims in state court, even by means of a second or subsequent petition for post-conviction relief where permissible under state law, before seeking habeas review in federal court." *Lovasz v. Vaughn*, 134 F.3d 146, 148 (3d Cir. 1998). Making tolling contingent upon some measure of success before the state courts would undermine AEDPA's emphasis on exhaustion. Unable to predict whether the state court will find that their successive petitions fit within the statutory exceptions allowing relief, many prisoners seeking to ensure compliance with AEDPA's limitation period either would forgo the successive state filing and submit a premature federal petition or would simultaneously file state and federal petitions. Federal courts would then face

_____

state court will not automatically consider the merits of claims raised in a successive petition, it will accept the petition for filing and review the application to determine whether the statutory exceptions are met. *See, e.g.*, *Ex parte Tucker*, 973 S.W.2d 950 (Tex. Crim. App. 1998) (examining whether second application for writ of habeas corpus contained facts sufficient to establish an exception allowing a grant of relief on the basis of the application); *Ex parte Sowell*, 956 S.W.2d 39 (Tex. Crim. App. 1997) (same). If the successive petition does not fit within an exception, the state court will dismiss it. This process is distinct from the refusal to accept a petition for filing.

the dilemma of holding petitions in abeyance or dismissing without prejudice petitions that may later be time-barred by virtue of the ensuing state court determination. *See Brewer v. Johnson*, 139 F.3d 491, 493 (5th Cir. 1998) (*per curiam*) (noting a district court's authority to abate or dismiss a petition if the prisoner has not exhausted available state remedies). Section 2244(d)(2), as we have interpreted it, avoids these pitfalls by allowing tolling if a prisoner complies with the state's procedural filing requirements. In this manner, AEDPA encourages exhaustion, avoids piecemeal and successive federal filings, and leaves established doctrine to deal with procedurally barred claims.

We are mindful of the respondent's concern that allowing tolling for meritless state petitions will undermine the limitation period imposed by AEDPA. Although our interpretation may forestall final resolution of some petitions, it will not extend to an excessive degree the time for filing; in nearly every case, the tolling will last only as long as the state court takes to resolve the pending application because any lapse of time before a state application is properly filed will be counted against the one-year limitation period. *See Flanagan v. Johnson*, 154 F.3d 196, 199 n.1 (5th Cir. 1998). Thus, a prisoner will not be able to revive an expired limitation period by simply filing a state petition in conformity with basic procedural requirements. Furthermore, the potential for delay may decline as states place stricter restrictions on the filings that are the basis of tolling. In the meantime, Texas's judicial abuse-of-the-writ doctrine will serve as

an impediment to the repeated filing of meritless petitions. This doctrine, which is similar to AEDPA's successive-petition provisions, allows the Texas Court of Criminal Appeals to refuse to accept a successive application from a petitioner who has abused the writ, unless the petitioner demonstrates that his claim could not have been raised in an earlier proceeding. *See, e.g.*, *Lowe v. Scott*, 48 F.3d 873, 875 (5th Cir. 1995). Thus, the abuse-of-the-writ doctrine minimizes the extent to which a petitioner can extend the federal limitation period. In the end, however, the respondents' concerns pertain to policy and are more appropriately directed to Congress and the state legislature. Any delay occasioned by tolling is insufficient to force an interpretation not supported by the statute.

## III

For the reasons discussed above, we conclude that 28 U.S.C. § 2244(d)(2) authorizes tolling during the pendency of petitions filed in accordance with a state's procedural filing requirements. We hold that Villegas's second state habeas petition, although dismissed as successive, was properly filed within the meaning of § 2244(d)(2). With the benefit of the resulting toll, Villegas filed his federal within the limitation period established by the AEDPA. We therefore VACATE the judgment and REMAND for further proceedings consistent with this opinion.

EMILIO M. GARZA, Circuit Judge, dissenting:

I write separately because I conclude that Villegas's second state habeas petition did not toll the limitations period. I concur with the conclusion of the majority opinion that 28 U.S.C. § 2244(d)(2) authorizes tolling the limitations period during the pendency of petitions filed in accordance with a state's procedural filing requirements. I disagree, however, with the majority's conclusion that Texas law places no limit on the number of successive state habeas petitions. I conclude that Villegas's second petition was not "properly filed" for the purposes of § 2244(d)(2), because Villegas did not file his petition in accordance with Texas's procedural requirements for the filing of a successive habeas petition.

Villegas filed two petitions for state collateral relief following the conclusion of direct review of his convictions. The Texas Court of Criminal Appeals dismissed his second petition as a Successive or Abuse of the Writ Petition, in accordance with Article 11.07, Section 4, of the Texas Code of Criminal Procedure. *See* TEX. CODE CRIM. P. ANN. art. 11.07 (West Supp. 1999). Villegas filed the instant habeas petition in federal district court. The magistrate judge found that the second state petition was not a proper filing, because the Texas court had refused the petition under state law as an abuse of the writ. The magistrate judge then concluded that the second petition was not "properly filed" according to the AEDPA, and thus would not toll the limitations period for filing the federal habeas petition. *See* 28 U.S.C. § 2244(d)(1). Subsequently, the district court adopted the magistrate judge's recommendation that the petition be dismissed with prejudice on the ground that it was barred by limitations. Villegas timely appealed.

Title 28 U.S.C. § 2244(d)(1) provides for a one-year limitations period for a state prisoner to file a writ of habeas corpus. Section 2244(d)(2) tolls the limitations period: "The time during which a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending shall not be counted toward any period of limitation under this subsection." The statute does not define the meaning of the phrase "properly filed," and the legislative history is similarly silent as to its import. *See, e.g., Hughes v. Irvin,* 967 F. Supp. 775,

-15-

778 (E.D.N.Y. 1997). Federal courts routinely defer to state procedural filing requirements, in lieu of creating federal filing requirements, to determine whether a habeas petition is "properly filed" in state court.[5] *See, e.g., United States ex rel. Morgan v. Gilmore,* 26 F. Supp. 2d 1035, 1038 (N.D. Ill. 1998) (stating that a "properly filed application" is one filed in accordance with a state's procedural requirements).

The parties dispute when a petition qualifies as "properly filed" under Texas law. Villegas argues that a petition is "properly filed" in Texas when it "is filed in the court in which the conviction being challenged was obtained."[6] The Respondent argues that a petition cannot be considered to have been "properly filed" if the petition was dismissed under state procedural rules as successive. The Respondent argues, essentially, that the failure to comply with Article 11.07, Section 4, means that Villegas's state habeas application was not "properly filed."

The majority opinion does not properly characterize the Respondent's argument. The majority states that "we are reluctant to engraft a merit requirement into § 2244(d)(2) without some indication of congressional intent to do so."[7] The opinion states later that, "[w]e similarly refuse to find that a successive state application or one containing procedurally barred claims is *per se* improperly filed." Such statements, which make no reference to state law filing requirements, indicate that the majority opinion is addressing whether the phrase "properly filed" should include a federally-created merits inquiry irrespective of state law. The issue of whether to read additional

---

[5] In other words, if a state requires an applicant to file a petition in thirty days, a federal court will defer to that state requirement, in lieu of creating a federal requirement.

[6] Villegas cites to Article 11.07, Section 3, of the Texas Code of Criminal Procedure. *See* TEX. CODE CRIM. P. ANN. art. 11.07, § 3.

[7] Such statements indicate that the majority views Article 11.07, Section 4, as an inquiry into the merits of the habeas petition. The inquiry required by Section 4 is distinct from, and occurs precedent to, a consideration of the merits. Section 4(a) prohibits a court from considering the merits of a petition unless the petitioner can show either (1) cause for failure to bring the claim previously, or (2) that, but for a violation of the United States Constitution, no rational juror could have found the applicant guilty beyond a reasonable doubt. *See* TEX. CODE CRIM. P. ANN. art. 11.07, § 4(a). The first provision is not concerned with the merits of the claim. The latter provision resembles a harmless-error analysis, and does not involve an inquiry into the merits of the claim. For this reason, it is incorrect to discuss Section 4 as if it requires an inquiry into the merits.

federal requirements into the meaning of "properly filed" is irrelevant, however, to the issue of whether a petition is not "properly filed" *because* it fails to comply with a state's procedural requirements. The Respondent is not requesting that we add federal requirements beyond those required by Texas procedural law. Rather, the Respondent's argument is grounded fundamentally on Villegas's failure to comply with Texas procedure. The Respondent argues that Villegas's second petition, which was dismissed as an abuse of the writ under Article 11.07, Section 4, failed to comply with Texas's procedural requirements. Thus, the issue on appeal is whether Texas's abuse-of-the-writ statute is a state procedural filing requirement.

Because I disagree with the majority's characterization of the Respondent's argument, I also disagree with the relevance of many of its arguments. Much of the majority's discussion considers whether "properly filed" includes a merits requirement independent of a state's procedural requirements. The majority states that it will not engraft a merits requirement into § 2244(d)(2) without some indication of congressional intent to do so. After acknowledging that the plain language and the legislative history are silent as to the meaning of "properly filed," the majority infers congressional intent from the language, structure, and purposes of the AEDPA. There is no indication, however, that Congress even considered this issue. Moreover, to the extent that one can infer congressional intent from the language, structure, or purposes of the AEDPA, the inference is that federal courts should defer to state procedural filing requirements.

The majority reasons from the absence of language in the AEDPA that refers to either merits requirements or successive-petition requirements. For example, the majority states that, "[h]ad Congress intended to condition tolling on a state court finding of merit, it could have drafted § 2244(d)(2) to exclude frivolous petitions from its scope. So too could Congress have crafted a provision that clearly withheld tolling from prisoners filing in state court successive petitions or petitions containing procedurally barred claims." Yet, Congress's choice of the phrase "a properly filed application" does not have any bearing on which types of state requirements apply. If federal courts require a petition to have "merit" if state procedural law so requires, then there was no need

for Congress to add a requirement that the petition be non-frivolous. On the other hand, some states may not include any form of "merits" inquiry in their state procedural filing requirements. For petitions filed in these states, federal courts should not perform a "merits" inquiry, because these states would not. If Congress had "crafted a provision that clearly withheld tolling from prisoners filing successive petitions," as the majority suggests, then in states that allow successive petitions, this provision would be in conflict with state law. A specification by Congress that "properly filed" shall include, or shall not include, certain procedural requirements would be inconsistent with deferring to the states. It is doubtful that Congress wished to add procedural filing requirements beyond those required by the states. To the contrary of the majority's opinion, the congressional intent ascertained from the phrase "properly filed" suggests deferring to all state procedural filing requirements, including those for successive petitions.

The majority opinion suggests that the structure of the AEDPA evinces congressional intent. The majority states "Congress enacted AEDPA against a backdrop of federal habeas law dealing with procedurally barred claims." The majority intimates that considering successive-petition requirements in the AEDPA's tolling provisions would alter this "legal landscape." Yet, the "legal landscape" is no more altered by recognizing states' successive-petition requirements than it is by recognizing timing requirements. Procedural default applies to claims that are filed late, and yet the majority recognizes that a "properly filed application" is one that is not filed late. *See, e.g., Coleman v. Thompson,* 501 U.S. 722, 749, 111 S. Ct. 2546, 2564, 115 L. Ed. 2d 640 (1991) ("By filing late, Coleman defaulted his entire state collateral appeal."). The majority did not look for congressional intent to alter the law on procedural default before it held that a "properly filed application" conforms with a state's applicable procedural requirements, which includes timing requirements. Therefore, it is disingenuous for the majority to cite the law regarding procedural default as an indicator of congressional intent.

The majority also supports its structural interpretation by reference to 28 U.S.C. § 2244(a)-(b). The opinion explains that Congress dealt with the problems raised by successive federal petitions

at the same time that it drafted the tolling provisions in § 2244(d)(2). The majority states that Congress's choice not to address successive state petitions in § 2244(d)(2) means that we should narrowly read the phrase "properly filed." This structural choice, however, is easily explained. Although Congress created federal procedural filing requirements to properly file a successive federal petition, it refrained from specifying state procedural filing requirements. This structural choice can be read as a display of comity toward state procedural filing requirements, which may or may not include successive-petition requirements. If anything, § 2244(b) suggests that a state's procedural requirements may include successive-petition requirements. In order to obtain a Certificate of Appealability ("COA"), § 2244(b)(3) requires an applicant to show either cause for failure to bring the claim in a prior petition or actual innocence. Yet, a successive federal habeas petition would not be "properly filed" if the petitioner did not obtain a COA. The COA requirement suggests that a state's "applicable procedural requirements" for a petition to be "properly filed" may, in some situations, include successive-petition requirements. Thus, I am unconvinced that the structure of the AEDPA favors the majority's interpretation of congressional intent.

The majority explains that its interpretation comports with the principle of comity. To the extent that the majority is declining to add a federal substantive requirement to "properly filed," I agree. However, to the extent that the majority refuses to recognize certain state procedural requirements, I find the majority opinion antithetical to the principle of comity. As explained above, if comity is a concern, then federal courts should look to state procedural filing requirements to ascertain whether a petition is filed properly. If a state does not allow prisoners to file frivolous successive petitions, then the federal courts should not undermine the state's decision by tolling the AEDPA's limitations period. Given that it is the *state* that created the successive-petition requirements, it cannot be said that the federal court that recognizes those state-created requirements is, according to the majority, second-guessing the state legislature's decision regarding the disposition

of state applications for post-conviction relief.[8] It cannot be said that the federal court is intruding into state proceedings or is not according adequate deference to the state courts.

The majority also explains that its interpretation comports with concerns regarding exhaustion. It states that we should not adopt an interpretation of § 2244(b)(2) that would discourage petitioners from exhausting claims in state court, "even by means of a second or subsequent petition for post-conviction relief where permissible under state law." *Lovasz,* 134 F.3d at 148. This statement recognizes that, if a state has expressed its preference that its courts should not hear certain claims, then there is no reason to toll the federal limitations period while the petitioners pursue those claims in state court. If a court determines that an application is not filed according to state procedural requirements, which may or may not include successive-petition requirements, then that application should not toll the limitations period. Although the AEDPA has an emphasis on exhaustion, as the majority asserts, it also directs federal courts to toll the limitations period only for applications that are "properly filed" in state court.

In discussing the exhaustion requirement, the majority reasons that including a merits requirement in "properly filed" would incur problematic results. The majority's concern is that prisoners will file unexhausted claims in federal court, and the federal district courts will abate the petitions or dismiss them without prejudice. If the state court determines that a petition does not meet the state's procedural requirement, and this determination occurs outside the limitations period, then the prisoner's frivolous petition is barred from federal review. This result is not problematic, because the only petitions that the limitations period will bar are those that are in violation of the state's procedural rules. In any event, the results are no more problematic than those associated with some state timing requirements recognized by federal courts. *See Triggs v. Cain,* No. CIV. A. 97-2430, 1999 WL 127249, at *2, 3 (E.D. La. Mar. 8, 1999) (finding that an application was not

---

[8] In this case, the Texas legislature passed a statute that the Texas state courts can not consider successive habeas petitions that are an abuse of the writ. It is perplexing that the majority professes to see no reason to "second-guess state legislatures' decisions," and yet it disregards the Texas statute.

"properly filed" where the petitioner failed to prove a statute-of-limitations exception that applies where the petitioner receives new information). Further, if a state law bars certain successive petitions, then we should not allow a petitioner to forestall the federal limitations period by repeatedly filing such petitions.[9] Thus, I disagree with the majority's exhaustion concerns.

I turn to whether Texas's abuse-of-the-writ statute is a state procedural filing requirement. Article 11.07 of the Texas Code of Criminal Procedure provides the "Procedure after conviction without death penalty":

§ 1. This article establishes the procedures for an application for writ of habeas corpus in which the applicant seeks relief from a felony judgment imposing a penalty other than death.
. . . .
§ 4. (a) If a subsequent application for writ of habeas corpus is filed after final disposition of an initial application challenging the same conviction, a court may not consider the merits of or grant relief based on the subsequent application unless the application contains sufficient specific facts establishing that:
(1) the current claims and issues have not been and could not have been presented previously in an original application or in a previously considered application filed under this article because the factual or legal basis for the claim was unavailable on the date the applicant filed the previous application; or
(2) by a preponderance of the evidence, but for a violation of the United States Constitution, no rational juror could have found the applicant guilty beyond a reasonable doubt.

TEX. CODE CRIM. P. ANN. art. 11.07. We should interpret the Texas statute as a Texas court would interpret it. *See United States v. Cobb,* 975 F.2d 152, 156 (5th Cir. 1992). "The primary rule in statutory interpretation is that a court must look to the intent of the legislature." *Union Bankers Ins. Co. v. Shelton,* 889 S.W.2d 278, 280 (Tex. 1994). When determining legislative intent, courts may look to the language of the statute and the legislative history. *See id.*

Turning to the statute's language, Section 1 states that Article 11.07 establishes the procedures for an application for a writ of habeas corpus. Section 1 confirms that Section 4 is a procedural requirement. Under Section 4, if a successive habeas application is filed, a court may not consider the merits of the application absent one of the statutory exceptions, i.e. cause or actual

---

[9] The majority states that "the respondents' concerns pertain to policy and are more appropriately directed to Congress and the state legislature." The Respondent's concerns, however, have been addressed by the Texas legislature in Article 11.07, Article 4. It is incongruent for the majority to encourage the Respondent to request change from the state legislature and then to refuse to recognize the state legislature's response to such requests.

-21-

innocence. The inquiry into whether the petition meets one of the statutory exceptions occurs precedent to an inquiry on the merits. The majority opinion states that Texas law places no absolute time or numerosity limitation on the filing of applications. Article 11.07, Section 4, places a limit, however, on the number of successive habeas applications—prisoners are limited to one habeas application except in limited circumstances.[10] Although a successive habeas application may be filed, it should not be considered "properly" filed if a state court rejects it on the procedural grounds listed in Section 4.[11]

The majority argues that Section 4 is not a procedural filing requirement by comparing it to other sections in the Texas Code of Criminal Procedure. The majority compares Article 11.07, which provides the "Procedure after conviction without death penalty," to Article 11.071, which provides the "Procedure in death penalty cases." Specifically, the majority makes a comparison to Article 11.071, Section 4, which provides some procedures for the filing of applications.[12] The proper comparison, however, is not to Article 11.071, Section 4. The counterpart of Article 11.07, Section 4, is Article 11.071, Section 5, which specifies the procedures for "Subsequent or Untimely Applications." Article 11.071, Section 5(a), provides that, if an application is untimely or is a subsequent application, then a court may not consider the merits of the application unless the

---

[10] Texas's procedural rules for the proper filing of successive petitions are comparable to the AEDPA's requirements for obtaining a COA. *See* 28 U.S.C. § 2244(b) (requiring applicant to show cause for failing to bring the claim in a prior petition or innocence).

[11] Some courts considering similar procedural provisions have come to the contrary conclusion. *See, e.g., Lovasz,* 134 F.3d at 148-49 (explaining that Pennsylvania law allows the filing of subsequent petitions and sometimes grants relief in such proceedings, and thus the state rule regarding the granting of subsequent petitions does not affect whether a petition is "properly filed"); *Souch v. Harkins,* 21 F. Supp. 2d 1083,1086-87 (D. Ariz. 1998) (concluding that a petition is "properly filed," irrespective of Arizona's rule on procedural default, if the petition complies with basic state requirements regarding place and time of filing). I am unpersuaded by these cases because I believe that, in addition to Texas's rules on the time and place for filing petitions, Texas's law on subsequent petitions affects whether an application is "properly filed."

[12] Article 11.071, Section 4 (a), gives the place and time requirements for filing a habeas application. Section 4(b) states that an application filed after the filing date is presumed untimely, unless the applicant can establish good cause by showing particularized justifying circumstances. *See* TEX. CODE CRIM. P. ANN. art. 11.071, § 4 (a)-(b).

applicant establishes (1) cause for failure to present the claim in a timely initial petition, (2) actual innocence, or (3) that the jurors would have answered differently the special sentencing issues. *See* TEX. CODE CRIM. P. ANN. art. 11.071, § 5 (a). This Section clearly parallels Section 4 of Article 11.07. The comparison to Article 11.071 also benefits by consideration of Section 6 of Article 11.071. Section 6 states that, if the convicting court receives notice that the petition meets the requirements of Section 5, then a writ of habeas corpus shall issue. *See* TEX. CODE CRIM. P. ANN. art. 11.071, § 6. The clerk of the convicting court then makes a notation that the writ has issued and assigns a file number to the case. *See id.*

Section 5 limits the timing and number of habeas applications. As provided by Section 6, a writ will not issue unless the petition meets the requirements of Section 5. Thus, Section 5 of Article 11.071 is a procedural filing requirement. We have interpreted Section 5(a) as a procedural rule that "prohibits the filing of subsequent or untimely habeas applications, absent cause or actual innocence." *Emery v. Johnson,* 139 F.3d 191, 195 (5th Cir. 1997), *cert. denied*, __ U.S. __, 119 S. Ct. 418, 142 L. Ed. 2d 339 (1998); *see also Fuller v. Johnson,* 158 F.3d 903, 906 (5th Cir. 1998) (stating that Article 11.071, Section 5, "precludes a state court from considering the merits of claims presented in a successive habeas application unless predicate facts for a statutory exception are established"), *cert. denied,* __ U.S. __, 143 S. Ct. 1809, 143 L. Ed. 2d 1012 (1999). The comparison to Section 5 suggests that Article 11.07, Section 4, is also a procedural filing requirement.

The legislative history of Texas's abuse-of-the-writ statute supports this interpretation. "Senator Montford, the author of the bill that added § 4(a) to Article 11.07, stated on the Senate floor that the provision 'adopts the abuse of the writ doctrine currently used in federal practice which limits an inmate to a one time application for writ of habeas corpus except, and I want to emphasize except, in exceptional circumstances.'" *Ex parte Torres,* 943 S.W.2d 469, 473 (Tex. Crim. App. 1997) (en banc) (quoting S.B. 440, April 19, 1995, Tape 1, Side 2). This statement suggests that,

in enacting Section 4, the legislature intended to limit the number of successive habeas petitions.[13] The Texas legislature has established procedural rules limiting the number of successive habeas applications. Based on the legislative history, we should consider Section 4 to be a requirement for an application to be "properly filed."

Looking to the language of the statute and the legislative history, I conclude that Texas courts would consider Article 11.07, Section 4, of the Texas Code of Criminal Procedure to be a state procedural requirement for the filing of successive petitions. *See Ex parte Davis,* 947 S.W.2d 216, 220 (Ct. Crim App. 1996) (en banc) ("Articles 11.07 and 11.071 both include similar restrictions on the filing of subsequent applications for writ of habeas corpus with both statutes becoming effective September 1, 1995. Both contain provisions that the merits of a subsequent application may not be considered unless the application contains sufficient facts establishing that certain conditions have been met."). Thus, compliance with Section 4 is required for an application to be "properly filed" under the AEDPA. Considering all of a state's procedural filing requirements, including those that may contain successive-petition requirements, is an approach that comports with comity and congressional intent. Villegas's state habeas petition, which was dismissed under Section 4, should not be considered "properly filed," and thus should not toll the AEDPA's limitations period. Therefore, I would affirm the district court.

---

[13] The floor discussion related solely to capital cases, however, Senator Montford had explained earlier that the subsequent writ provision applied to both capital and non-capital cases. *See Ex parte Torres,* 943 S.W.2d at 473 n.6.