Jesus ABREU, Petitioner,

v.

Stephen J. HUFFMAN, Respondent.

No. 1:98 CV 2958.

United States District Court,
N.D. Ohio,
Eastern Division.

Feb. 2, 2000.

Jesus Abreu, Lebanon, OH, petitioner pro se.

Delores J. Hildebrandt, Office of the Attorney General, Cincinnati, OH, Stephanie L. Watson, Office of the Attorney General, Corrections Litigation Section, Columbus, OH, for respondent.

*MEMORANDUM OF OPINION AND ORDER DISMISSING PETITION FOR WRIT OF HABEAS CORPUS AND GRANTING CERTIFICATE OF APPEALABILITY*

WELLS, District Judge.

This case is before the Court on petitioner Jesus Abreu's petition for a writ of habeas corpus filed 22 December 1998, pursuant to 28 U.S.C. § 2254. On 22 January 1999, this Court issued an order pursuant to Rule 4, directing respondent to file an answer and granting petitioner leave to respond. The Court simultaneously referred the case to United States Magistrate Judge Nancy A. Vecchiarelli.

On 23 March 1999, D.J. Hildebrandt from the Office of the Attorney General filed a motion to dismiss the petition as time barred on behalf of respondent Stephen J. Huffman. On 12 April 1999, Magistrate Judge Vecchiarelli denied the motion and ordered the state to file a return of writ. The state filed a renewed motion to dismiss the petition on 27 August 1999 and a return of writ on 30 August 1999.[1]

After granting Mr. Abreu an extension of time in which to file his traverse and to respond to the state's motion to dismiss, Magistrate Judge Vecchiarelli issued her report and recommendation on 6 October 1999. Although she determined Mr. Abreu's petition was not barred by the statute of limitations set forth in the Antiterrorism and Effective Death Penalty Act of 1996 (the "AEDPA"), she found he had failed to demonstrate cause and prejudice for a procedural default and was thus barred from bringing his petition to federal court. The state filed objections on 3 November 1999. Mr. Abreu filed objections on 8 November 1999 and supplemental objections on 18 November 1999.

For the reasons set forth below, Mr. Abreu's petition is denied.

I.   *Factual Background*

On 4 January 1995, a Cuyahoga County Grand Jury indicted Mr. Abreu on four counts of aggravated drug trafficking and one count of possession of criminal tools. Counts One, Two, and Four included allegations that Mr. Abreu had two prior felony drug convictions; Count Three included a firearm specification. (Respondent's Return of Writ, Appendix 2, at 3 (hereinafter App. ___).) A jury trial before Judge Carolyn Friedland began on 20 February 1996. On 29 February 1996, the jury found Mr. Abreu guilty of the aggravated drug trafficking counts, but found him not guilty of the firearm specification or of possessing criminal tools. (App. 2, at 4.) On 1 March 1996, Judge Friedland sentenced him to the Lorain Correctional Institution for a term of twenty years to life on Count One, a concurrent term of five to fifteen years on Count Two, a term of fifteen years to life to run consecutively with Counts One and Two on Count Three, and a term of

1. When the state failed to respond to Mr. Abreu's petition within the time ordered by Magistrate Judge Vecchiarelli, Mr. Abreu filed a motion entitled "Motion by Petitioner for Order for Writs of Certiorari to be issued; for the Court to Invoke Sanctions in the Form of a State Waiver of all State and Federal Procedural Defenses for the Failure to File a Return of Writ, and for the Court to Issue a Ruling On the Merits of the Petitioner's Grounds for Relief in the Writ of Habeas Corpus" (docket no. 24). One week after Mr. Abreu filed this motion, on 30 June 1999, the state filed a motion for an extension of time. Magistrate Judge Vecchiarelli granted the state's motion on 6 July 1999, stating she expected "the respondent to meet this new deadline." Because Magistrate Judge Vecchiarelli's order addressed the issue in Mr. Abreu's motion, it is denied as moot.

five to fifteen years to run concurrently with Count Three on Count Four. (App.1.)

On 18 November 1996, Mr. Abreu made a timely direct appeal to the Court of Appeals of Ohio, Eighth District, raising two assignments of error: (1) "Jesus Abreu's convictions were against the manifest weight of the evidence;" and (2) "Jesus Abreu was denied his constitutional right to a fair trial before a jury, when the trial court refused to give his requested jury instruction." (App. 2, at i.) On 5 May 1997, the Court of Appeals issued its Journal Entry and Decision finding both assignments to be without merit. (App.4.) Mr. Abreu then filed a timely notice of appeal to the Supreme Court of Ohio in which he again argued the trial court had denied his constitutional right to a fair trial by refusing to give a requested jury instruction. (App.5.) On 3 September 1997, the Supreme Court "denie[d] leave to appeal and dismisse[d] the appeal as not involving any substantial constitutional question." (App.7.)

On 26 December 1997, 236 days after the Court of Appeals issued its order, Mr. Abreu filed an application in the Court of Appeals to reopen his appeal, pursuant to Ohio Rule of Appellate Procedure 26(B). Under Rule 26(B), an appellant may apply for reopening of an appeal "within 90 days from journalization of the appellate judgment unless the applicant shows good cause for filing at a later time." Ohio App.R. 26(B). Mr. Abreu attempted to show good cause for his delay by arguing he did not receive a copy of his trial court transcript until 1 November 1997. (App. 8, at 1.) He also contended his appellate counsel was ineffective for failing to raise the following errors: (1) there was insufficient evidence to sustain a conviction for selling or possessing cocaine; (2) the sentences and convictions for Counts 2 and 4 constitute double jeopardy; (3) the trial court should have bifurcated the trial on the question of whether Mr. Abreu had prior felony convictions; (4) prosecutorial misconduct; (5) the State of Ohio lacked jurisdiction; (6) Mr. Abreu was given two sentences for essentially the same crime. (App. 11, at i–ii.) On 19 March 1998, the Court of Appeals denied Mr. Abreu's application to reopen his appeal for "fail[ure] to establish good cause for filing beyond the time limits set forth in App. R. 26(B)." (App. 11, at 3.) Even if good cause had been shown, it added, "a substantive review of applicant's ... proposed assignments of error fails to demonstrate a viable claim of ineffective assistance of appellate counsel." (App. 11, at 3.)

Mr. Abreu then appealed to the Ohio Supreme Court on 15 April 1998, raising the same issues he did in his application to the Court of Appeals to reopen his appeal. (App.13.) On 3 June 1998, the Ohio Supreme Court dismissed this appeal as not involving any substantial constitutional question. (App.15.)

On 22 December 1998, Mr. Abreu filed the present petition for habeas corpus. Mr. Abreu seeks relief from this Court on the following grounds:

1. The Petitioner was denied the right to effective assistance of appellate counsel in violation of the Sixth and Fourteenth· Amendments to the Constitution of the United States.

2. The Petitioner's convictions violate his right to be free from double jeopardy in violation of the Fifth and Fourteenth Amendments to the Constitution of the United States.

3. The evidence was insufficient to sustain the convictions of the Petitioner in violation of due process of law and the Fifth and Fourteenth Amendments to the Constitution of the United States.

4. The Petitioner was denied a fundamentally fair trial and due process of law by prosecutorial misconduct in violation of the Fifth, Sixth and Fourteenth Amendments to the Constitution of the United States.

5. The Petitioner was denied a fundamentally fair trial and due process of law when the trial court refused to

bifurcate determination of his prior conviction and withhold knowledge of the prior conviction from the jury, and where the prosecution repeatedly argued the prior conviction in closing arguments before the jury, in violation of the Petitioner's rights to a fundamentally fair trial and due process of law secured by the Fifth, Sixth and Fourteenth Amendments to the Constitution of the United States.

(Petition at 3, 6, 7, 9, 11.)

## II. *Law and Analysis*

### A. *The Statute of Limitations*

The AEDPA establishes a one-year statute of limitations within which state prisoners must file federal habeas corpus petitions. Under 28 U.S.C. § 2244(d)(1)(A), the limitation period begins to run "from the latest of the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review." In other words, the period begins either at the conclusion of review in the United States Supreme Court or when the time for seeking certiorari has expired—*i.e.,* ninety days after the state's Supreme Court has concluded review. *See Jones v. Morton,* 195 F.3d 153, 157 (3d Cir.1999) (so holding); *Smith v. Bowersox,* 159 F.3d 345, 347 (8th Cir. 1998) (same); *Coelho v. Romero,* 185 F.3d 873, 1999 WL 430166, at *1 (10th Cir.1999)

(same).[2] Under 28 U.S.C. § 2244(d)(2), the statute is tolled for "the time during which a *properly filed* application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending" (emphasis added).

Although neither the AEDPA nor its legislative history define the term, *see Villegas v. Johnson,* 184 F.3d 467, 470 (5th Cir.1999), a majority of courts now agree an application is "properly filed" if it has been "submitted according to the state's procedural requirements, such as the rules governing notice and the time and place of filing."[3] *See Lovasz v. Vaughn,* 134 F.3d 146, 148 (3d Cir.1998); *see also Lucas v. Carter,* 46 F.Supp.2d 709, 712 (N.D.Ohio 1999) (holding same); *Austin v. Mitchell,* 200 F.3d 391 (6th Cir.1999) (recognizing the majority view); *McSheffrey v. Angelone,* 172 F.3d 863 (4th Cir.1999) (upholding dismissal of habeas as time-barred on grounds that "properly filed" implies notice to the respondent, proper place of filing, and timeliness); *Hughes v. Irvin,* 967 F.Supp. 775, 778 (E.D.N.Y.1997) (holding same).

The courts do not agree, however, on who decides whether an application has in fact met the state's procedural requirements. More particularly, they are divided over the following issue: whether a state prisoner's state application, which was dismissed as procedurally improper by

---

**2.** As the Eighth Circuit has pointed out, "a well-established body of federal case law" interprets the phrase "final by the conclusion of direct review" to include the ninety-day window in which to file a writ of certiorari. *See Smith,* 159 F.3d at 347; *see also Griffith v. Kentucky,* 479 U.S. 314, 321 n. 6, 107 S.Ct. 708, 93 L.Ed.2d 649 (1987) (stating a conviction is "final" when "a judgment of conviction has been rendered, the availability of appeal exhausted, and the time for a petition for certiorari elapsed or a petition for certiorari finally denied"). "When Congress elects to use terminology that has become commonplace in court decisions in a particular field of law, the rules of statutory construction call for us to define the statute's terms in harmony with that accepted judicial meaning." *Smith,* 159 F.3d at 347.

**3.** A minority of courts have held that a "properly filed" application is one that is "non-frivolous"—*i.e.,* that is not without merit. *See U.S. ex rel. Washington v. Gramley,* No. 97 C 3270, 1998 WL 171827 (N.D.Ill. Apr.10, 1998); *Hill v. Keane,* 984 F.Supp. 157 (E.D.N.Y.1997); *Valentine v. Senkowski,* 966 F.Supp. 239 (S.D.N.Y.1997). This Court agrees with Magistrate Judge Vecchiarelli, however, that this approach "does not adequately serve the interests of comity and exhaustion" because it discourages petitioners from exhausting all of their claims in state court and requires federal courts to review petitions to state courts on their merits. (R & R at 6–7.)

the state court, was "properly filed" within the meaning of the tolling provision of the AEDPA.

Some hold an application tolls the statute if the state *could* decide it was filed in accordance with proper procedure. In *Villegas v. Johnson*, 184 F.3d 467 (5th Cir. 1999), for instance, the defendant had filed two state habeas petitions. The Texas appeals court dismissed the second petition as an abuse of writ, citing a statute forbidding successive state habeas petitions unless the defendant demonstrated facts sufficient to fit within a statutory exception allowing relief.[4] When the defendant filed his federal habeas petition, the respondent argued the petitioner's second state writ should not toll the AEDPA's statute of limitations because the Texas court had decided the second state petition had not been "properly filed." The Fifth Circuit disagreed, noting that Texas "places no absolute time or numerosity limitations on the filing of applications for a writ of habeas corpus.... In fact, Texas law specifically contemplates the filing of successive applications." *Id.* at 471. If a state allows some petitioners to file successive petitions, it held, "federal courts should not undermine the state's decision by refusing to toll the one-year period of limitation"—even if the state had decided differently in the instant case. *Id.* (citing *Lovasz v. Vaughn*, 134 F.3d 146, 148 (3d Cir.1998)).

Other courts have held differently, deciding the federal courts must defer to a state's own decisions about its procedural rules. In *Dictado v. Ducharme*, 189 F.3d 889 (9th Cir.1999), for example, the defendant had filed four personal restraint petitions in the Washington Court of Appeals. The Court of Appeals dismissed the fourth petition as successive, and the state Supreme Court concurred, concluding the petition was both time-barred and successive. The defendant then filed a federal habeas petition, arguing his petition was not time-barred under the AEDPA because the federal courts should "treat as 'properly filed' any state application that appears on its face to comply with the state's basic procedural rules." *Id.* at 892. The Ninth Circuit disagreed. Such an interpretation, it noted, would require the federal courts to ignore an explicit holding of the state Supreme Court. *See id.; see also Tinker v. Hanks*, 172 F.3d 990 (7th Cir.1999) (holding same).

Under the *Villegas* court's analysis, Mr. Abreu's application to reopen would have been "properly filed." In Magistrate Judge Vecchiarelli's words,

> there is no definitive time for filing an application to reopen under [Ohio Appellate] Rule 26(B). A petitioner may file an application to reopen and obtain review of his application on the merits at any time *if* he demonstrates good cause for the delay. Although the Court of Appeals ultimately denied Abreu's application to reopen, Abreu followed proper procedure under Rule 26(B) by attempting to demonstrate good cause in his application.

(R & R at 7.) In other words, the statute of limitations would have begun on 3 December 1997, ninety days after the Ohio Supreme Court denied his appeal and the last day on which Mr. Abreu could have sought certiorari in the United States Supreme Court. Then, because Ohio allows late applications in some cases, the statute would have been tolled from 26 December 1997 to 19 March 1998 while the Court of Appeals considered his application. When he filed his federal petition on 22 December 1998, Mr. Abreu's application would fall within the one-year limit. (R & R at 8.)

This Court agrees with the Ninth and Seventh Circuits, however, that an application does not automatically toll the statute of limitations if it appears on its

---

**4.** Specifically, the statute prohibits courts from considering the merits of a second petition unless the petitioner can show either (1) cause for failure to bring the claim previously or (2) that, but for a violation of the United States Constitution, no rational juror would have found the applicant guilty. *See Villegas*, 184 F.3d at 474 n. 3.

face to conform to state procedural law. Principles of comity require federal courts to defer to a state's judgment on issues of state law and, more particularly, on issues of state procedural law. *See Engle v. Isaac,* 456 U.S. 107, 128–29, 102 S.Ct. 1558, 71 L.Ed.2d 783 (1982) (noting "the Great Writ imposes special costs on our federal system" when it "undercut[s] the State's ability to enforce its procedural rules"); *Murray v. Carrier,* 477 U.S. 478, 491, 106 S.Ct. 2639, 91 L.Ed.2d 397 (1986) (noting that a "State's procedural rules serve vital purposes at trial, on appeal, and on state collateral attack"). Indeed, because "[i]t is axiomatic that state courts are the final authority on state law," *Hutchison v. Marshall,* 744 F.2d 44, 46 (6th Cir.1984), federal courts must accept a state court's interpretation of its statutes and its rules of practice, *see Duffel v. Dutton,* 785 F.2d 131, 133 (6th Cir.1986).

■ It follows that federal courts should likewise defer to a state court's finding as to whether an application has been submitted according to the state's procedural requirements.

> Certainly it is in the interest of comity to allow the state appellate courts to decide whether a delayed application for reopening has been "properly filed" under state law and then to follow that decision in interpreting Section 2244(d)(2). Thus if the state court decides the application's lateness is excused by good cause, the federal courts should not second-guess that conclusion and should toll the time under Section 2244 while it is pending. Conversely, however, when the state appellate court finds no good cause we should defer to that procedural ruling.

*Penson v. Collins,* No. C–3–98–307 (W.D.Ohio Aug. 3, 1999) (unpublished). To do otherwise requires federal courts to

disregard a state court's explicit holding that a petition did or did not comport with a state's procedural law, *see Dictado v. Ducharme,* 189 F.3d 889, 892 (9th Cir. 1999) (so holding); *Villegas,* 184 F.3d at 476 (Garza, J., dissenting) (so stating), and to act contrary to Congressional intent. As the *Dictado* court pointed out, "Congress could not have intended to toll the statute of limitations for the period during which even improper applications were pending in state court or it would not have included the 'properly filed' limitation." *Dictado,* 189 F.3d at 892. Nor could Congress "have intended that the time for filing the federal action be tolled indefinitely by the simple expedient of filing repeated applications for leave to file state post-conviction relief." *Tinker v. Hanks,* 172 F.3d 990, 990–91 (7th Cir.1999) (rejecting argument that application for leave to commence a state post-conviction relief proceeding was "properly filed").[5]

■ Under this reasoning, Mr. Abreu's application cannot toll the statute of limitations. Rule 26(B)(2)(b) does not simply require late applicants to set forth reasons for the delay, it requires them to make a "showing" of good cause. The Ohio Court of Appeals held that Mr. Abreu had not made such a showing, and it therefore denied his application to reopen on the grounds that he "failed to establish good cause for filing beyond the time limit." (App. 11, at 3.) Because Mr. Abreu both filed after the ninety-day deadline and failed to establish good cause, then he likewise failed to follow proper procedure under Ohio law, and his application was thus not "properly filed." *See* 28 U.S.C. § 2254(d). Hence, his petition for federal habeas corpus was also untimely. Mr. Abreu did not file his habeas petition until 22 December 1998, 386 days after the time

---

**5.** It is true this holding may occasionally mean that prisoners will be compelled to file their federal habeas petitions while an application for delayed reopening is pending. In such a situation, however, the federal court need only stay the proceedings until the state court issues its ruling. If the state court

accepts the application for delayed reopening, the federal court can dismiss the case without prejudice. If the state court denies the application, the federal habeas petition will nonetheless be timely. *See Tinker,* 172 F.3d at 991 (so holding); *see also Hudson v. Martin,* 68 F.Supp.2d 798, 800 (E.D.Mich.1999) (same).

for seeking a petition for certiorari and beyond the one-year time limit under the AEDPA.[6]

Therefore, Mr. Abreu's claims are barred by the statute of limitations, and his petition for a writ of habeas corpus under 28 U.S.C. § 2254 will be denied.

## B. *Procedural Default*

As Magistrate Judge Vecchiarelli found, Mr. Abreu's petition could not stand even if it had been timely. Under 28 U.S.C. § 2254, a state prisoner can only challenge the constitutionality of her or his state court conviction in federal court if the prisoner has properly "exhausted the remedies available in the courts of the State." 28 U.S.C. § 2254(b)(1)(A). The exhaustion requirement is satisfied even if the prisoner has failed to raise a claim at all, although such a claim is deemed to have been waived unless the prisoner can show "cause and prejudice" or actual innocence. *See Wainwright v. Sykes*, 433 U.S. 72, 87, 97 S.Ct. 2497, 53 L.Ed.2d 594 (1977).

Mr. Abreu has raised five claims in his habeas corpus petition before this Court: (1) ineffective assistance of appellate counsel; (2) double jeopardy; (3) insufficient evidence to sustain a conviction; (4) prosecutorial misconduct; and (5) the trial court's refusal to bifurcate. Magistrate Judge Vecchiarelli found Mr. Abreu had procedurally defaulted on all five claims. (R & R at 10.)[7] He failed to raise the last four issues before either the Ohio Appeals Court or the Ohio Supreme Court, and although his application to reopen rested on ineffective assistance of counsel, that application was dismissed as untimely. Therefore, "all of Abreu's claims are procedurally barred, unless Abreu can show cause and actual prejudice." (R & R at 10.)

Magistrate Judge Vecchiarelli further found Mr. Abreu had failed to show cause for procedurally defaulting on his ineffective assistance of counsel claim.

Abreu claims his "cause" for procedural default was that he had not received a transcript within the ninety day period following the journalization of his direct

6. In the alternative, Mr. Abreu contends this Court need not decide whether his application to reopen tolls the statute of limitations because an application to reopen is part of the process of direct review. (Supplemental Objs. at 4–10.) Under this reading of the statute, direct review was not completed until 3 June 1998 when the Ohio Supreme Court denied Mr. Abreu's untimely application to reopen.

Mr. Abreu's interpretation of the statute is unworkable. If a defendant filed a timely application to reopen, it would make little difference whether a federal court decided the application had tolled the statute of limitations or held the statute had not yet begun running. Under Mr. Abreu's interpretation of 28 U.S.C. § 2244(d), the statute would not begin running until the state Supreme Court ruled on the application to reopen. Under this Court's interpretation, the statute would begin running when the Supreme Court ruled on the "direct appeal," but the time would be tolled until it had also ruled on the application to reopen. Either way, a defendant would have one year from the date the Supreme Court ruled on the application to file a federal habeas petition.

If a defendant filed an *untimely* application to reopen, however, Mr. Abreu's reading would thwart efforts to bring finality to state court judgments. For example, a habeas petitioner could file a direct appeal on 1 January 2000, have his conviction upheld by the state Supreme Court on 1 July 2000, and then file an untimely application to reopen two years later, on 1 July 2002. Mr. Abreu would contend the prisoner had not completed direct review until the latter date, thus giving the prisoner until 1 July 2003 to file a habeas petition in federal court.

7. In his second objection to Magistrate Judge Vecchiarelli's Report and Recommendation, Mr. Abreu claims the "Magistrate was clearly erroneous in finding that the separate grounds for relief raises as 1.) double jeopardy; 2.) prosecutorial misconduct; 3.) failure to bifurcate determination of prior conviction; and 4.) insufficiency of the evidence were not exhausted at pages 9–10 of the Report." (Objs. at 7.) Magistrate Judge Vecchiarelli did not, however, contend Mr. Abreu had failed to exhaust these claims. She found "these claims are procedurally barred." (R & R at 10.)

appeal decision. Abreu claims that as an indigent petitioner, the State has a duty to provide him with a trial transcript.

. . .

The obligation to obtain the transcript falls upon Abreu's shoulders. Although Abreu requested a copy of his transcript from his appellate counsel, he did not prior to the filing of his direct appeal. The State does not have an obligation to provide an additional transcript when the defendant is represented by counsel. Further, Abreu has not indicated that he requested a transcript from either his appellate counsel, the State, or the court, other than his request on October 5, 1997, five months after journalization of the direct appeal decision. Since Abreu failed to request a transcript in a timely manner, he did not demonstrate cause for this procedural default.

(R & R at 10–11.) This Court concurs with Magistrate Judge Veccharelli's finding, and Mr. Abreu has raised no objections to it.

■■■ Mr. Abreu does note that he can raise "ineffective assistance of appellate counsel" as "cause" for his state procedural default on the remaining four claims. (Objs. at 5–6.) *See Carpenter v. Mohr*, 163 F.3d 938, 945–46 (6th Cir.1998) (holding a petitioner can raise ineffective assistance of appellate counsel as cause even if the application to reopen was untimely). However, ineffective assistance of appellate counsel will only satisfy the "cause" requirement if it rises to the level of a constitutional violation, and Mr. Abreu has not shown "there is a reasonable probability that but for counsel's errors, the result of the proceedings would have been different." *Id.* at 946 (internal citations omit-

ted). To the contrary, the Ohio Appeals Court stated clearly that "none of the proposed assignments [of error] would have resulted in a reversal of applicant's convictions."[8] If the choices made by Mr. Abreu's counsel would not have altered the outcome of his appeal, then he was not prejudiced. If he was not prejudiced, then his appellate counsel's allegedly deficient performance did not rise to the level of a constitutional violation and thus cannot constitute "cause" for his procedural default. *See Carpenter*, 163 F.3d at 946.

Therefore, this Court adopts Magistrate Judge Vecchiarelli's recommendation on the issue of procedural default. Even if Mr. Abreu had filed his application in a timely manner, he is procedurally barred from raising his habeas claims in federal court.

### III. *Certificate of Appealability*

For the foregoing reasons, Mr. Abreu's petition for habeas corpus is denied. However, the question of whether a delayed application for reopening has been properly filed is one on which, as has been shown, there is a split of authority. *Compare, e.g., Villegas v. Johnson*, 184 F.3d 467 (5th Cir.1999), *with Tinker v. Hanks*, 172 F.3d 990, 990–91 (7th Cir.1999) *and Dictado v. Ducharme*, 189 F.3d 889 (9th Cir.1999). Accordingly, this Court grants Mr. Abreu a certificate of appealability on the issue of whether an Ohio application for delayed reopening under Ohio R.App. 26(B) is "properly filed" within the meaning of 28 U.S.C. § 2244(d) when the Ohio Court of appeals has decided that there was no good cause for delay. Furthermore, Mr. Abreu is granted *in forma pauperis* status for appeal.

IT IS SO ORDERED.

8. Specifically, the Ohio Court of Appeals stated:

> The trial transcripts demonstrate that applicant was convicted with sufficient evidence at a fair jury trial. The fact that appellate counsel chose different arguments to raise on appeal than those now proposed by applicant is insufficient to raise an issue of counsel's competence on appeal. It is the

> job of appellate counsel to evaluate potential arguments for presentation to an appellate court and to eliminate the weakest of those arguments, especially those unsupported by the record. Thus, even if good cause were established, applicant has not presented a genuine issue as to whether he was deprived of effective appellate counsel.
>
> (App. 11 at 4 (internal citations omitted).)

## JUDGMENT ENTRY

The Court, having contemporaneously entered its Memorandum of Opinion and Order, denies petitioner Jesus Abreu's petition for a writ of habeas corpus. This Court grants Mr. Abreu a certificate of appealability on the issue of whether an Ohio application for delayed reopening under Ohio R.App. 26(B) is "properly filed" within the meaning of 28 U.S.C. § 2244(d) when the Ohio Court of Appeals has decided there was no good cause for delay. Furthermore, Mr. Abreu is granted *in forma pauperis* status for appeal.